**Donald H. GAGER, et al.**

v.

**MOBIL OIL CORPORATION.**

**Civ. No. H–82–384.**

United States District Court,
D. Connecticut.

Sept. 30, 1982.

Richard W. Farrell, Abate, Fox & Farrell, Stamford, Conn., for plaintiffs.

William E. Glynn, Scott P. Moser, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON PLAINTIFFS' MOTION FOR PERMANENT INJUNCTIVE RELIEF

BLUMENFELD, Senior District Judge.

In this case the plaintiffs challenge the defendant Mobil Oil Corporation's (Mobil) refusal to consent to an assignment to the plaintiff Kenneth Coomes of Mobil's franchise contracts with the plaintiff Donald Gager. The plaintiffs' challenge is based upon the Connecticut Gasoline Dealers Act, Conn.Gen.Stat. §§ 42–133j through 42–133n, which regulates various aspects of the relationship between petroleum product franchisors and franchisees. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Only questions of state law are raised in this litigation.[1]

The plaintiff, Donald Gager, is the sole owner of a franchise granted by Mobil for the operation of a Mobil service station adjacent to Interstate 95 in Niantic, Connecticut.[2] The Niantic location, in the opinion of William Nappo, Mobil's Sales Manager for the Southern New England Resale District, is a "Class A" location selling over 900,000 gallons of gasoline per year and can be classified as within the top ten percent of the district's stations in terms of volume of business. The value of the real estate to Mobil has been estimated to be between one-half and three-quarters of a million dollars.

---

1. The federal Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.*, although applicable to this franchise relationship, regulates only terminations of or failures to renew existing franchise contracts and leaves to state law the regulation of prohibitions on assignments or transfers of franchise contracts, 15 U.S.C. § 2806(b). The state statute is only operative, however, to the extent that it is consistent with the federal law. 15 U.S.C. § 2806(a); *Ted's Tire Service, Inc. v. Chevron U. S. A., Inc.,* 470 F.Supp. 163, 165 (D.Conn.1979).

2. Mr. Gager is also the lessee of the real property at which the station is operated. The real property is owned by Mobil and leased to its franchisee.

In January 1982 Mr. Gager signed a contract of sale with his co-plaintiff, Kenneth Coomes, in which they agreed that Mr. Gager would sell his business to Mr. Coomes for a total of approximately $90,000. To date Mr. Coomes has paid $15,000 towards the purchase price and, upon closing, will pay 50 percent down with Mr. Gager taking a secured promissory note for the other 50 percent to be paid over a three-year period at 12 percent interest. In the event the deal is not consummated because of Mobil's refusal to consent to the assignment of the franchise, Mr. Coomes will be refunded all but $1,000 of the money he has paid to date.

On February 3, 1982, after the plaintiffs entered into the contract of sale, the plaintiffs' attorney wrote to Mr. Nappo informing Mobil of the proposed sale and requesting that Mobil arrange to obtain from Mr. Coomes all the information needed "to confirm his qualification as a Mobil franchisee." Defendant's Exhibit A. This was the first time Mr. Nappo was informed of Mr. Gager's intention to assign his franchise to Mr. Coomes.

Subsequently a series of interviews with Mr. Coomes was arranged by Mobil representatives. Mr. Coomes was interviewed first by Dale Austin, Mobil's marketing representative for the Niantic location. They met for two and a half hours and discussed Mr. Coomes' work experience, education and marketing ideas. Mr. Austin formed a negative opinion of Mr. Coomes as a dealer candidate. He found Mr. Coomes ill prepared for the interview and was particularly unimpressed with his marketing ideas. Specifically, Mr. Austin testified that, in his opinion, Mr. Coomes indicated a negative attitude toward the idea of introducing self-service as a means of increasing the volume of business, stating that, "he didn't want to rock the boat with the other dealers that were in the neighborhood." Transcript of May 18, 1982 hearing at 111.[3] Mr. Austin made an oral report of his impressions to his superiors.

Shortly thereafter, Mr. Coomes was interviewed by Stephen House, Mr. Austin's immediate supervisor, who is employed by Mobil as the area manager with jurisdiction over this location. The meeting lasted about 30 minutes. Mr. House was similarly unimpressed with Mr. Coomes' qualifications and formed the opinion that he was unqualified to operate Mr. Gager's service station. He concluded that Mr. Coomes lacked sufficiently aggressive business ideas and, in addition, that Mr. Coomes' work and business experience was inadequate preparation for the operation of a business involving in excess of one million dollars in gross sales annually.

After receiving reports from both Mr. Austin and Mr. House, Mr. Nappo, who has authority to make the final decision as to whether to approve the assignment of the franchise to Mr. Coomes, met with Mr. Coomes to conduct another interview. Although normally Mr. Nappo would not interview a candidate where the initial interviews are unfavorable, Mr. Nappo conducted an additional personal interview because of the fact that Mr. Gager had already entered into a contract of sale with Mr. Coomes. Mr. Nappo talked to Mr. Coomes for approximately 20 minutes and discussed his work experience, education, and management ideas and experience. Mr. Nappo concluded that Mr. Coomes did not have sufficient business experience to effectively handle a business of this magnitude. He did, however, at a subsequent meeting with Mr. Coomes and his mother, Shirley Coomes, offer Mr. Coomes the opportunity to apply for a franchise at another location in Montville, Connecticut, where he could gain business experience by first taking on a smaller volume business. Both Mr. Coomes and his mother indicated that they were not interested in that location. They explained in court that their reason for refusing to consider the Montville station

---

**3.** Mr. Coomes is currently employed as assistant manager at the competing Sunoco service station located directly across the street from Mr. Gager's Mobil station. Mr. McGinley, the dealer who owns the Sunoco franchise, testified as a witness in this trial on Mr. Coomes' behalf. See page 857 infra.

was that it was known to have a history of business failures.[4]

Subsequent to these interviews Mr. Coomes submitted a written application and financial statement.[5] Mr. Coomes has a work history of four years and has been employed at three service stations in Niantic, Connecticut. According to his own testimony, he worked part-time until he graduated from high school two years ago and has since worked full-time. He began as a gas attendant, learned to do minor automotive repairs, became a shift manager while employed by Mr. Gager, and is now the assistant manager at Mr. McGinley's Sunoco station across the street from Mr. Gager's station. Both Mr. Gager and Mr. McGinley testified in support of Mr. Coomes' qualifications to be a franchise service station dealer. Mr. McGinley, currently a franchise dealer for Sunoco, has previously been employed by Sunoco in a capacity which required him to select and counsel franchise dealers for Sunoco. He testified that during his employment with Sunoco he interviewed approximately 200 dealer candidates and filled between 50 and 70 dealer locations. Based on his experience as Mr. Coomes' employer he expressed his opinion that Mr. Coomes is an excellent dealer candidate.

By a letter dated March 19, 1982 Mr. Nappo informed Mr. Coomes of Mobil's decision to refuse consent to the proposed assignment of Mr. Gager's franchise to Mr. Coomes. This decision was based upon the conclusion that Mr. Coomes lacked sufficient business and work experience to "demonstrate the responsibility required to run a service station of this magnitude." Transcript at 44. In addition, Mobil's representatives were unimpressed with his attitude and marketing ideas. On the basis of three interviews and after reviewing Mr. Coomes' application, Mr. Nappo made the final decision to refuse consent to the proposed assignment. His judgment was shared by the two subordinate employees who had also interviewed Mr. Coomes.

Mr. Nappo has explained to the court why Mobil considers it necessary to undertake a serious review of the business qualifications of its dealer candidates. Mobil's profits are tied directly to the volume of business done by its service stations. The manner in which the dealer manages his station directly controls his volume of business. The business decisions made by Mobil's franchise dealers on questions of pricing, hours of operation, the extent of services offered and the quality of the station's appearance and staff all have a direct effect on Mobil's profits.

Mobil has a substantial investment at stake in this service station location making the selection of a franchise dealer who can maximize the return on this investment of great importance to the corporation. Once the initial choice of a franchisee is made, the company's discretion to terminate or not renew the franchise is very limited. *See, e.g.,* 15 U.S.C. § 2802(b). In addition, since Mr. Gager has more than ample security for the note covering one-half of the purchase price, it is clear that the risk of a poor business judgment in selecting Mr. Coomes lies only upon Mr. Coomes himself and Mobil.

Mr. Gager and Mr. Coomes have challenged Mobil's refusal to consent to the proposed assignment of Mr. Gager's franchise to Mr. Coomes. Their complaint challenges Mobil's disapproval of the assignment under sections 42–133*l* and 42–133m(a) of the Connecticut Gasoline Dealers Act. This statute regulates various aspects of petroleum industry franchise contracts. Section 42–133*l* limits a franchisor's ability to terminate or fail to renew a franchise contract by imposing a "good cause" stan-

---

4. Mr. Nappo also offered Mrs. Coomes the opportunity to apply for the Niantic franchise in her own name. She never submitted an application, however, because she feels that it was unnecessary since her son is well-suited to take care of the station. Transcript at 168. In addition, she is currently employed at two jobs.

5. Mr. Coomes' financial capacity to undertake this business was not a factor in Mobil's decision to disapprove this assignment.

dard on such action, Conn.Gen.Stat. § 42–133*l*(a), and also prohibits terminations or failures to renew motivated by any of a number of specified grounds enumerated in section 42–133*l*(e). Section 42–133*l*(f) makes it illegal for a franchisor to engage in a variety of specified practices vis-a-vis its franchisee. Section 42–133m(a) in effect imposes a reasonableness standard limiting the franchisor's power to refuse its consent to a franchisee's proposed assignment of a franchise.

The plaintiffs' complaint makes three distinct legal arguments. The first and primary claim is that Mobil's disapproval of this assignment is unreasonable in violation of Mobil's franchise contract with Mr. Gager and Conn.Gen.Stat. § 42–133m(a). Second, they contend that Mobil has violated its statutory duty under Conn.Gen.Stat. § 42–133*l*(f)(6) to deal in good faith with Mr. Gager, its current franchisee. Lastly, they contend that Mobil's action constitutes a prohibition of a change in management without good cause in violation of Conn. Gen.Stat. § 42–133*l*(f)(4). The defendant counters that Mobil's refusal to approve this franchise is justified by substantial business reasons and, therefore, cannot be considered in violation of either the terms of Mr. Gager's franchise contract or the laws of the State of Connecticut.

I shall consider each of the plaintiff's arguments in turn despite the fact that the parties have only briefed and argued plaintiffs' first claim, i.e. that Mobil's action violates Conn.Gen.Stat. § 42–133m(a).

### I. *Conn.Gen.Stat. § 42–133m(a)*

Conn.Gen.Stat. § 42–133m(a) is one provision of the Connecticut Gasoline Dealers Act which was enacted by the Connecticut legislature in 1977. It provides:

(a) A term in any franchise agreement between a franchisor and a franchisee which prohibits the voluntary assignment of the franchise to which they are parties, or which requires the franchisor's consent to such assignment, is ineffective and void as contrary to public policy unless such term provides that consent may be or is reasonably withheld. Reasonable withholding of consent includes, but is not limited to: (1) Material and substantial change of the other party's duties; (2) material and substantial increase of the other party's contractual burden of risk; (3) material and substantial impairment of the other party's opportunity to obtain return performance.

Conn.Gen.Stat. § 42–133m(a).

This statute by its terms does not require Mobil's disapproval of a franchise assignment to be reasonable. It only voids any contractual prohibition on assignments which does not provide that "consent may be or is reasonably withheld." *Id.* Mobil's contract with Donald Gager contains such a provision which has been amended to comply with the requirements of this statute. Specifically, Article 18 of Mobil's "retail dealer contract" with Mr. Gager, as amended, reads:

Any assignment of this contract by the Buyer without the Seller's written consent shall be void. However, the Seller shall not unreasonably withhold such consent.

Plaintiff's Exhibit 1.[6]

Technically, the question before the court is one of contractual interpretation, not statutory construction. In this case, however, the contractual language is specifically required by law and, therefore, the court shall look to the policy behind the statute and the intent of the legislature in construing the contractual provision. *See* Restatement (First) of Contracts § 236(d) (1932).

The court must attempt to define the substantive content of the reasonableness

---

**6.** Mobil's lease agreement with Donald Gager contains a prohibition on assignments without any reasonableness qualification. Plaintiff's Exhibit 1. Mobil is obviously of the opinion that Conn.Gen.Stat. § 42–133m(a) does not apply to leases of real property even if they are part of an overall franchise relationship. The lease contract does not appear at first glance to come within the definition of "franchise" set forth by the statute. Conn.Gen.Stat. § 42–133k(b). It is unnecessary to definitively resolve this question, however, as the parties have not raised or argued the point.

standard imposed by section 42–133m(a). The plaintiff, relying on the explicit examples of reasonable withholding of consent provided by the statute, proposes that this court construe the statute as requiring a showing by the franchisor that the proposed assignment imposes a material and substantial increased risk or alteration of the franchisor's burden or opportunity to obtain return performance. Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Permanent Injunctive Relief at 4–6. The defendant proposes the following construction:

> Mobil must explain to the Court the reason for its action, satisfy the Court that its stated reason is in fact the explanation for Mobil's conduct, and not a sham or artifice to disguise some other motive. Moreover, the Court must be satisfied that Mobil's reason for rejection is rationally related to the franchise relationship. Finally, the Court can require that Mobil's process for decision-making be reasonable.

Defendant's Post-Trial Memorandum at 10.

A. *The Burden of Proof*

The parties agree that the defendant bears the burden of showing that its refusal of consent was reasonable. *Id.;* Plaintiffs' Memorandum at 6. I conclude that this is the correct construction of the statute. The legislature clearly intended to protect franchise dealers from unfair and abusive overreaching by petroleum industry franchisors. The statute itself includes legislative findings to this effect:

> In order to promote the public interest and public welfare, *to avoid undue control of the* dealer by suppliers, . . . and to offset *evident abuses* within the petroleum industry *as a result of inequitable economic power,* it is necessary to legislate standards pursuant to the police power of this state governing the relationship between suppliers and distribu-

tors of gasoline and petroleum products and the dealers within the state who sell those products to the public.

Conn.Gen.Stat. § 42–133j(a) (emphasis added). The statute must be liberally construed, therefore, as a remedial statute designed to correct recognized historical abuses by petroleum industry franchisors. *See, e.g., Hartford Fire Ins. Co. v. Brown,* 164 Conn. 497, 503, 325 A.2d 228 (1973). In addition, specific legislative findings on the issue of assignments of franchise contracts leads me to conclude that the franchisor should bear the burden of showing that its refusal to consent is reasonable:

> The legislature finds and declares that existing petroleum franchise agreements . . . uniformly prohibit assignment of franchise interests without the consent of the franchisor, which consent may be *unreasonable and arbitrarily* withheld. . . . The legislature finds and declares that such provisions constitute unreasonable restraints on alienation and inhibit the fair and efficient functioning of a free market economy within the petroleum industry. Therefore, it is provided that the provisions of any franchise agreement which prohibit assignment without the consent of the franchisor and permit such consent to be unreasonably withheld are void and without effect as contrary to public policy.

Conn.Gen.Stat. § 42–133j(c) (emphasis added).

B. *The Content of the Reasonableness Standard*

The question of the substantive content of the franchisor's burden under Conn.Gen. Stat. § 42–133m(a) is more difficult to resolve. One possible construction is that the franchisor may only have the burden of convincing the court that it has a reason which is rationally related to the franchise relationship. This is basically the standard proposed by the defendant.[7] A minimal

---

**7.** Mobil, in addition, would allow the court to review the rationality of the franchisor's decision-making process and determine whether the franchisor's stated reason is in fact the actual motive or a pretext disguising another, perhaps illegitimate, reason. These elements are not determinative in this case so I need not dwell at length on the question of whether they are properly considered in the court's review under section 42–133m(a) of a franchisor's re-

"rational basis" review of this sort is suggested by the legislature's use of language such as "unreasonably and arbitrarily withheld" in its statement of legislative findings. *See* Conn.Gen.Stat. § 42–133j(c). The term "arbitrary" suggests the possibility that the legislature was only concerned with requiring some minimal articulation of a reason for the franchisor's disapproval.

The operative section of the statute, however, uses language which leads me to conclude that the legislature intended the courts to engage in a more substantial review of the franchisor's explanation than merely requiring the franchisor to articulate a legitimate reason for its action. Section 42–133m(a) uses the terms "material and substantial" repeatedly to describe the showings which could be considered reasonable bases for withholding consent. In fact, the bill which eventually became the Connecticut Gasoline Dealers Act was amended in committee to specifically add the word "substantial" to this section. 20 Conn. General Assembly House Proceedings 1977 Part 9 at 3478. The deliberate use of the phrase "material *and* substantial" (emphasis added) indicates that the court must not only determine that the franchisor's reason is material to the franchise relationship but, in addition, must satisfy itself that there is some substance to the justification. I conclude, therefore, that more than the articulation of a reason rationally related to the franchise relationship is required by this statute.

It is not easy to define precisely what the franchisor must show in addition to a reason which is rationally related to the franchise relationship. At the outset, it is clear that the legislature did not intend the court to substitute its judgment for the experienced business judgment of the franchisor. Within the bounds of reasonableness there is room for an unwise decision or a difference of opinion. Conn.Gen.Stat. § 42–133m(a) explicitly allows a franchisor to refuse consent to a proposed assignment for "material and substantial" reasons. The federal Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.,* which places substantial limitations upon a franchisor's freedom of action in dealing with its franchisees, makes an explicit exception to the "good cause" standard governing the termination or failure to renew an existing franchise [8] for "trial" or "interim" franchises. 15 U.S.C. § 2803. A "trial franchise" is a franchise contract, for a term of no more than one year, with a franchisee who "has not previously been a party to a franchise with the franchisor." *Id.*[9] Thus, a trial franchise allows the franchisor to independently determine whether the trial franchisee meets its standards. Since the federal statute was enacted with the same remedial purpose as the Connecticut act, *compare* S.Rep.No.95–731, 95th Con., 2d Sess. 1 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 873, *with* Conn.Gen.Stat. § 42–133j(a), the Connecticut statute should be construed in a manner which also allows franchisors some opportunity to make their own independent evaluation of potential franchisees.

The Connecticut legislature applied a distinctly different standard to the assignment situation than that governing the termination or failure to renew an existing fran-

---

fusal to consent to a franchise assignment. The evidence clearly shows the fairness of Mobil's decision-making process. As to the question of pretext, the plaintiff offered some evidence which could support an argument that the defendant's purported explanation of its disapproval was a pretext disguising an illegitimate motivation. The plaintiff did not plead or argue this theory, however, and the court is not inclined, at any rate, to credit this evidence. Although I assume that a proper showing of pretext could rebut the defendant's showing of reasonableness, I need not definitively resolve this legal issue in this case.

**8.** 15 U.S.C. § 2802. *See* note 1 *supra.*

**9.** This section of the federal act does not apply to a situation where an existing franchise is assigned or transferred "to the extent authorized by the provisions of the franchise or any applicable provision of state law which permits such transfer or assignment." 15 U.S.C. § 2803(b)(2). Although Conn.Gen.Stat. § 42–133m(a) is not preempted by the federal act, it must be construed in a manner which is consistent with the federal statute's overall scheme and purpose.

chise contract. Conn.Gen.Stat. § 42–133*l* (a) applies a "good cause" limitation on the franchisor's power to terminate or fail to renew a franchise [10] whereas section 42–133m(a) requires that the franchisor's refusal to consent to an assignment be only "reasonable." The legislature specifically did not require disapproval of a proposed assignment to be for good cause. Conn. Gen.Stat. § 42–133m(a) should be construed, therefore, in a manner which meaningfully distinguishes it from the good cause standard of section 42–133*l*(a).

Although I have been unable to find any reported cases construing this specific provision of the Connecticut statute, statutes of other states address the same issue and provide guidance as to the kinds of considerations which are of sufficient substance to justify a franchisor's disapproval of a proposed assignment. New Jersey requires a franchisor to set forth in writing "material reasons relating to the character, financial ability or business experience of the proposed transferee." N.J.Stat.Ann. § 56:10–6 (West 1981–1982 Supp.). California will allow a petroleum industry franchisor to withhold its consent to an assignment where, among other things, the "proposed purchaser of the franchise has less business experience and training than that normally required by the franchisor." Cal. Business and Professions Code § 21148 (West 1982 Supp.). Other statutes merely require that the franchisor set forth in writing the specific grounds for the refusal to consent to the assignment. *E.g.*, Mass.Ann. Laws ch. 93E, § 4A(b). Thus, concern with a proposed franchisee's character, business experience and training, or financial ability are appropriate and substantial considerations which a franchisor is entitled to take into consideration when reviewing a proposed assignment.

█ In summary, the franchisor must first convince the court that its reasons for refusing consent to a proposed assignment are material, i.e. rationally related to the franchise relationship. Second, although the court need not concur in the franchisor's decision, it must be convinced that the franchisor's reasons are of some substance. Examples of "substantial" reasons would be, among other things, concerns about the proposed franchisee's character, business experience and training or financial ability.[11]

C. *Application of Section 42–133m(a) to the Case at Bar*

█ Mobil's decision to disapprove the assignment of Mr. Gager's franchise to Mr. Coomes was based primarily on the judgment that Mr. Coomes lacks sufficient business experience to successfully manage a business of the magnitude of this service station. Insufficient business experience and training of the franchisee is a factor which the statutes of both New Jersey and California specifically recognize as justifying a franchisor's withholding of consent in such a situation. It is not only a relevant criteria but an extremely important one from the franchisor's point of view. I conclude, therefore, that this reason alone will justify Mobil's refusal to consent to the proposed assignment. Mobil has offered a substantial amount of evidence supporting

---

10. Of course, to the extent that Conn.Gen.Stat. § 42–133*l*(a) is inconsistent with 15 U.S.C. § 2802, the federal act preempts the state law. 15 U.S.C. § 2806(a)

11. I do not, however, mean to imply, as the plaintiffs' proposed construction suggests, that the franchisor must prove a material and substantial increased risk or contractual burden to the franchisor in order to justify its disapproval. Although any material and substantial reason for refusing consent to an assignment would involve, in all probability, a judgment that the assignment constitutes an increased risk for the franchisor, the plaintiffs' proposed construction implies that the franchisor must

prove an actual increase in risk. This would place a burden of proof on the franchisor which would be practically impossible to meet in most cases. The factor of risk inevitably involves questions of probability that are not susceptible to specific proof. The plaintiffs' attempt to impose an impossible burden of proof upon franchisors is inconsistent with the statute which explicitly allows a franchisor to refuse its consent on reasonable grounds. In addition, the statute clearly states that the specific examples enumerated in section 42–133m(a)(1)– █ are not exclusive but merely illustrative of reasonable grounds for refusing consent.

its conclusion that Mr. Coomes has insufficient business experience. Not only did its employees give specific examples in support of their conclusion that Mr. Coomes lacked the business judgment required for the job, but Mr. Coomes' own testimony and application reveal a limited business experience and a full-time work history of only two years. While the Horatio Alger concept is not dead in the economic fabric of America, a little skepticism about its undeviating success in our present complicated system is not unreasonable. The evidence clearly supports the finding, therefore, that Mobil had material and substantial reasons justifying its refusal to consent to this assignment.

## II. *Conn.Gen.Stat. § 42–133l(f)(6)*

The complaint also raises the claim that Mobil's refusal to consent to this assignment violates its duty under Conn.Gen. Stat. § 42–133l(f)(6) [12] to deal in good faith with Mr. Gager, its present franchisee. I find that the evidence presented to this court wholly fails to support a finding that Mobil has acted in bad faith in any respect in its review and final disapproval of Mr. Gager's proposed assignment. Mobil carefully reviewed the qualifications of the proposed assignee. Mr. Coomes was interviewed at least three times. In fact, Mr. Nappo personally interviewed Mr. Coomes despite the fact that Mobil's regular procedure did not call for an interview by Mr. Nappo in cases where both his subordinates reported unfavorable results from earlier interviews. Mobil has offered to assist Mr. Gager in finding another, acceptable assignee so that Mr. Gager can proceed with his plans to sell his business. Mobil's representatives spoke highly of Mr. Gager and expressed their complete satisfaction with his performance as a franchise dealer over the years. There is absolutely no evidence that Mobil is in any manner attempting to deny Mr. Gager an opportunity to sell his business for the maximum amount the market will bear. I find, therefore, that Mobil has not violated its duty to act in good faith in its dealings with Mr. Gager.

## III. *Conn.Gen.Stat. § 42–133l(f)(4)*

The plaintiffs also contend that Mobil's refusal to approve this assignment constitutes a prohibition of a change in management without good cause in violation of Conn.Gen.Stat. § 42–133l(f)(4). [13] Although this claim was not argued or briefed by the parties, basic principles of statutory construction compel the conclusion that section 42–133l(f)(4) does not apply to assignments of franchise contracts.

The "change in management" provision applies a "good cause" standard to a franchisor's prohibition of a change in management by a franchisee. Section 42–133m(a), on the other hand, applies a reasonableness standard to a franchisor's refusal to consent to a proposed assignment. The statute thus explicitly makes a distinction between the standards which govern a franchisor's conduct in the two situations. If I were to construe section 42–133l(f)(4)'s good faith standard as applicable to assignments it would render section 42–133m(a) meaningless since a showing of "good cause" is clearly more substantial than a showing of "reasonableness." Separate parts of a statute should be reconciled wherever possible to avoid rendering any portion of the statute meaningless. *See, e.g., Connecticut Light & Power Co. v. Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980); *Atwood v. Regional School District No. 15,* 169 Conn. 613, 621, 363 A.2d 1038 (1975). In addition, it is well established that specific statutory provisions prevail over more general provisions. *Id.* at 622, 363 A.2d 1038.

12. Conn.Gen.Stat. § 42–133l(f)(6) provides:

No franchisor, directly or indirectly, . . . shall
. . .
(6) fail to deal in good faith with a franchisee
. . . .

13. Conn.Gen.Stat. § 42–133l(f)(4) provides:

No franchisor, directly or indirectly, . . . shall
. . .
(4) require or prohibit any change in management of any franchise unless such requirement or prohibition of such change shall be for good cause, which cause shall be stated in writing by the franchisor . . . .

Section 42–133m(a)'s reasonableness standard, therefore, controls since it is the section which specifically addresses the issue at bar.

### IV. *Conclusion*

For the reasons stated above, judgment shall enter in favor of the defendant, Mobil Oil Corporation.

SO ORDERED.