**In re WONDER CORPORATION OF AMERICA, Debtor.**

**Bankruptcy No. 5–86–00436.**

United States Bankruptcy Court, D. Connecticut.

March 25, 1987.

See also, Bkrtcy., 72 B.R. 580.

Douglas A. Strauss, David A. Greenberg, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for debtor.

Christopher Belmonte, Kevin Preston, Lane & Mittendorf, New York City, for Waldco, Inc.

Donald Lee Rome, Stephen E. Goldman, Susan Roman, Robinson & Cole, Hartford, Conn., for Chase Manhattan Bank, N.A.

Thomas A. Gugliotti, Walter E. Paulekas, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for Old Stone Bank.

Michael A. Zizka, Murtha, Cullina, Richter & Pinney, Hartford, Conn., Ethan D. Fogel, Neal Colton, Dechert, Price & Rhoads, Philadelphia, Pa., for Societe Generale.

Martin W. Hoffman, Hartford, Conn., for Unsecured Creditors' Committee.

Byron P. Yost, Evans & Baldwin, Bridgeport, Conn., for Richard E. Roy.

Richard Belford, New Haven, Conn., trustee.

Wayne Davis, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Dewey, Ballatine, Bushby, Palmer & Wood.

MEMORANDUM OF DECISION AND ORDER ON STANDING OF AN UNIMPAIRED CREDITOR TO OBJECT TO CONFIRMATION OF A CHAPTER 11 PLAN OF REORGANIZATION

ALAN H.W. SHIFF, Bankruptcy Judge.

On February 20, 1987, the debtor, Wonder Corporation of America and Waldco,

Inc. ("the Proponents") filed an Amended Disclosure Statement and an Amended Joint Plan of Reorganization. On February 25, 1987, the Proponents filed a Statement Amending Debtor's Amended Disclosure Statement and Amended Joint Plan of Reorganization, and on that date,[1] after notice and a hearing, the court determined that the disclosure statement complied with Bankruptcy Code § 1125(b) and permitted the Proponents to proceed with a confirmation hearing, scheduled for March 3, 1987. At the confirmation hearing on that date, Chase Manhattan Bank N.A., Old Stone Bank, and Societe Generale, a French bank, ("the Banks") all of which are secured creditors with liens on and security interests in virtually all the debtor's assets, including those acquired post-petition, objected to confirmation. In response, the Proponents argued that the Banks were unimpaired and therefore lacked standing to object to confirmation.

The issues thus presented are: (1) whether the Banks are unimpaired, and (2) if they are, do they lack standing to object to confirmation?[2]

## 1
## IMPAIRMENT OF CLAIMS

Pursuant to § 1123(a)(2), which requires that a plan shall "specify any class of claims or interests that is not impaired under the plan," the subject Plan provided as follows:

## ARTICLE I

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

*Class 3*

1. The notice period prescribed by Bankruptcy Rule 3017(a) was reduced pursuant to Bankruptcy Rule 9006(c).

2. At the continued confirmation hearing on March 18, 1987, the court issued an oral order from the bench to the effect that the Banks were unimpaired and therefore had no standing to object to confirmation. That decision was based on the February 20, 1987 Amended Disclosure Statement and Amended Joint Plan of Reorganization which was further amended on February 25, 1987. In addition, the court stated that a memorandum of decision and order

Class 3 shall consist of the holders of Allowed Secured Claims whose debt is secured by the real estate of Wonder.

*Class 4*

Class 4 shall consist of the holders of Allowed Secured Claims whose debt is secured by both real estate and personal property of Wonder.

## ARTICLE II

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

*Class 3*

(a) The holders of Class 3 Allowed Secured Claims shall be paid in full on the Payment Date.

(b) Class 3 is not impaired under the Plan.

*Class 4*

(a) The holders of Class 4 Allowed Secured Claims shall be paid in full on the Payment Date.

(b) Class 4 is not impaired under the Plan.

The Disclosure Statement accompanying the Plan defines an "Allowed Secured Claim" as a claim "equal to the value of the interest of the holder thereof in property of the Debtor securing such Allowed Claim". The Payment Date is "the 20th business date following the date on which the Confirmation Order becomes a Final Order." "Final Order" is defined as

an order or judgment which has not been reversed, stayed, modified or amended

would thereafter enter. On March 19, 1987, during the continued confirmation hearing, the Proponents filed a Modification of Plan. This Memorandum of Decision and Order is based upon the Plan as it existed on February 25, 1987 ("the Plan"). It is noted, however, that the March 19, 1987 modification did not alter the status of the Banks as unimpaired. The modification provided, *inter alia*, that "[t]here shall be no transfer of property of the Debtor until the Payment Date, at which time the full allowed amount of the Class 3 and Class 4 Claims [of the Banks] will be paid in cash."

and as to which no appeal is pending and the time to appeal and to seek leave to appeal or to seek review or rehearing has expired.

Thus, the Plan provides that the Banks, which are designated as Class 3 and Class 4 secured creditors, are to be paid the full amount of their allowed claims on the 20th business day following the date on which the confirmation order is no longer subject to appeal or other review and has not been reversed, stayed, modified or amended.

Impairment is defined by § 1124, which provides that a class of claims is impaired by a reorganization plan if it is not accorded treatment which satisfies one of the three alternative methods described in that section. The Plan here proposes to satisfy the requirements of § 1124(3) which states in pertinent part that:

> a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
>
> > provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
> >
> > > (A) with respect to a claim, the allowed amount of such claim.

The Banks contend that the Plan does not meet the requirements of § 1124 since it does not conform to any subsection therein. In particular, the Banks charge that the Plan arguably is attempting to meet the requirements of § 1124(3) but fails to do so in that it does not provide for payments in cash, and does not provide for payment on the effective date of the Plan since the Plan does not provide for an effective date.

The Banks' assertion that the Plan does not contemplate payment in cash does not merit comment. Although "effective date" is not specifically defined in the Plan, it is apparent from the definition contained in the Amended Disclosure Statement, which accompanied the Plan, that the "Payment Date" is the effective date of the Plan and that the Banks are to be paid on that date.

■ Next, the Banks contend that even if the Plan were amended to provide that payment would be in cash and to define the Payment Date as the effective date of the Plan, the Banks would nevertheless be impaired because the Payment Date is an indeterminate date. In the Banks' view, keying the effective date of the Plan to the finality of the confirmation order impairs the holders of Class 3 and Class 4 claims by creating an uncertainty which violates the purpose of § 1124. Counsel for the Banks cite *In re Jones*, 32 B.R. 951 (Bankr.D.Utah 1983) and *In re Otero Mills, Inc.*, 31 B.R. 185 (Bankr.D.N.M.1983) as support for that proposition. I find those decisions inapposite since their principal thrust is to hold that cure and compensation under § *1124(2)* must be completed by the effective date if impairment is to be avoided. Here the Banks go a step further and assert that under § *1124(3)*, where cure is not contemplated and valuation is not required, the effective date must be a short period after confirmation if not the date of confirmation itself.

While this may be conceptually attractive, *see In re Jones, supra*, 32 B.R. at 958 n. 13, in the real world of bankruptcy reorganization, it may not be attainable. Indeed, the *Jones* court concluded that it may not be possible to establish the "effective date" with any more exactitude than to require that it be reasonably close to the date of the confirmation hearing, *Id. See also In re Rolling Green Country Club*, 26 B.R. 729, 735 (Bankr.D.Minn.1982); Klee, "All You Ever Wanted To Know About Cram Down Under The Bankruptcy Code", 53 *Am.Bankr.L.J.*, 133 137 n. 24 (1979); 3 *Norton Bankruptcy Law and Practice*, § 62.06.

I agree with the Banks that the effective date in § 1124(3) cannot be indefinite or distant. In considering the relationship between the effective date and the entry of a confirmation order, courts should be mindful of the fact that a Chapter 11 plan is very often the end result of a long process marked by considerable controversy and negotiation, and that during that process, the prepetition rights and expectations of

creditors are at least temporarily subordinated to the public policy of giving qualified debtors an opportunity for a fresh start.

It is common for plans to be unopposed. The lack of opposition, however, might be the consequence of statutory acceptance rather than actual creditor consent. Therefore, a creditor may be unimpaired·by the literal language of § 1124(3), and yet severely impaired by the loss of favorable contract terms, but not entitled to reject the plan under § 1126(f).[3] Although § 1124(3) is silent as to the timing of the effective date, Congress could not have intended to eliminate a creditor's negative vote unless § 1124(3) were meant to be read as requiring some reasonable limitation on the interval between the confirmation order and the effective date of the plan. In the absence of a specific statutory formula, courts must supply such meaning, so that the effective date is linked to the happening of a particular event and is no later than is reasonably necessary to accomplish a legitimate purpose such as the determination of administrative expenses or the resolution of objections to claims. Here the effective date is defined as the "20th business day following the date on which the Confirmation Order becomes a Final Order." That is not such an unreasonably long time as to conflict with the equitable balances set by Chapter 11. Indeed, it is not uncommon for a plan to fix the effective date to a time after the confirmation order is final in recognition of a

prospective lender's reluctance to advance funds until the appeal period has passed.

The Banks further argue that by tying the effective date to the finality of the confirmation order, their collateral may erode, perhaps to levels below the allowed amount of their claims, before payment is received. Since, however, it is apparent that any procedural delay will most likely be instituted by the Banks themselves,[4] that argument is unpersuasive as nothing more than a self-fulfilling prophecy whereby any appeal they file will delay the proposed payment and cause the interest on their secured claims to increase, thereby jeopardizing their right to full payment. This concern could be minimized if not completely avoided, since if the Banks do not create a delay, the effective date need be no later than 30 days after the entry of the Confirmation Order, at which time the Plan provides for the full cash payment of their allowed claim. Moreover, this court has authority under Bankruptcy Rule 3020(a) to order the Proponent to deposit "prior to entry of the order confirming the plan, ... the consideration required by the plan to be distributed on confirmation. Any money deposited shall be kept in a special [presumably interest bearing] account established for the exclusive purpose of making the distribution." It is significant that the Banks did not request such a deposit.

■ The Banks' remaining claims of impairment[5] are premised on their contention

3. 11 U.S.C. § 1126(f) (1984) provides that:
Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

4. Under the Plan, the holders of unsecured claims less than $1,000.00, or of $1,500.00 who were willing to accept $1,000.00, are to be paid in full on the effective date of the plan. All other unsecured creditors are placed in Class 5 which is impaired in that its members would receive a dividend totalling 70% in two installments. On February 25, 1987, the attorney rep-

resenting the Unsecured Creditors' Committee issued a letter recommending that unsecured creditors vote in favor of the Plan. The other classes are either unimpaired or, in the case of Class 1 holders of administrative claims, are likely to accept the Plan in the event they are deemed to be impaired.

5. Societe Generale also argues that it is impaired on the basis of an outstanding letter of credit it issued to Chase for the benefit of the debtor. That argument is unavailing. The Plan provides that Societe Generale and the other Banks will get no less than they are entitled to by law on the effective date of the Plan, and any adjustments which might be necessary by and between the Banks cannot serve as a basis upon which impairment may be founded.

that since the Plan proposes to make payments after the date of the confirmation order, the Plan contemplates deferred cash payments which require the protection of §§ 1129(a)(7)[6] and 1129(b)(2)(A).[7] Under that analysis, the Banks assert that they would receive better treatment, including the retention of their liens and cash payments to compensate for the time value of their money and the risk of diminution of the value of their collateral. The Banks' reliance on §§ 1129(a)(7) and 1129(b)(2)(A) is misplaced and their reference to *In re Jones, supra,* in which the relationship between §§ 1124 and 1129(b) was examined, is inapplicable. *Jones* involved payments to be made *after* the effective date of the plan, whereas, here the Plan proposes to cash out the Banks in full on the effective date.

Applying the "plain meaning rule", *see Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *In re Timbers of Inwood Forest,* 793 F.2d 1380, 1384 (5th Cir.1986) *reinstated,* 808 F.2d 363 (5th Cir.1987), it is apparent that subsections 1129(a)(7) and (b)(2)(A) are intended to provide for the treatment of each class of impaired claims and not to define those claims which are to be afforded such treatment. Congress could have, but did not specify that, until the effective date of the plan, an unimpaired class of claims was entitled to the protections afforded by other sections of the Code, or for any other means to protect and preserve the rights and remedies the holders of secured claims bargained for. Instead § 1124(3) provides only that the holders of such claims receive on the effective date of the plan cash equal to the allowed amount of their claims.

For the foregoing reasons, I find that the Proponents' Plan satisfies the requirements of § 1124(3). The Banks are therefore unimpaired.

2

## STANDING TO OBJECT TO CONFIRMATION

The Banks contend that even if they are found to be unimpaired under the Plan, they nevertheless have standing under §§ 1109(b)[8] and 1128(b)[9] to appear and be heard at the confirmation hearing. I disagree.

As Judge Lifland observed in *In the Matter of Johns-Manville Corp.,* 68 B.R. 618 (Bankr.S.D.N.Y.1986), while Code § 1109 permits parties in interest to raise, appear, and be heard on any issue in a case under Chapter 11,

---

**6.** Section 1129(a)(7) provides, in pertinent part:
The court shall confirm a plan only if all of the following requirements are met ...
With respect to each *impaired* class of claims or interests—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date ... (emphasis added).

**7.** 11 U.S.C. § 1129(b)(2)(A) provides in pertinent part that:
For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

**8.** 11 U.S.C. § 1109(b) provides that:
A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

**9.** 11 U.S.C. § 1128(b) provides that:
A party in interest may object to confirmation of a plan.

recent, persuasive case law has limited the standing of parties in interest to object to plan confirmation on appeal. *See, e.g. In re Evans Products Co., et al.,* 65 B.R. 870, 874 (S.D.Fla.1986) ("Appellants have standing only to challenge those parts of a reorganization plan that affects their direct interests."), *and In re Fondiller,* 707 F.2d 441 (9th Cir.1983) (only "aggrieved persons" may *appeal* an order of the Bankruptcy Court), *and In re Sweetwater,* 57 B.R. 743, 746 (D.Utah 1985) ("This court interprets the 'aggrieved person' test to mean that an appellant who is appealing from a Bankruptcy Court order, confirming a plan of reorganization, may challenge only those parts of the plan that directly, adversely, and pecuniarily affect the appellant."); *and see Holywell Corp. v. Bank of New York,* 59 B.R. 340, 349 (S.D.Fla.1986).

Under these cases only parties adversely affected by provisions of a plan may raise an objection to confirmation based on such provisions, on appeal. Thus, no party may successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation. Although these cases discuss the question of standing on *appeal,* they are instructive with respect to the question of standing in a contested confirmation hearing. The doctrine of standing serves to protect the adversarial system which constitutes the cornerstone of American judicial process. Pursuant to this system, courts generally will only hear the arguments of parties who have a direct stake in the consequences of a proceeding. (emphasis in original).

*Id.* at 624.

■ Judge Lifland concluded that only parties adversely affected by a reorganization plan may raise an objection at the confirmation hearing. Furthermore, such objection should be limited to those provisions of the plan which directly, adversely and pecuniarily affect the party raising the objection. I agree with Judge Lifland that it is appropriate to apply this concept of standing to confirmation hearings.

The broad language of §§ 1109 and 1128 cannot be construed to provide standing to all creditors on the issues involved in the confirmation of a reorganization plan. The expansive standing provisions of those sections must be read with and yield to the conclusive presumption of acceptance of a reorganization plan by unimpaired claimants under § 1126(f).[10] It is a well established rule of statutory construction that wherever possible, separate parts of a statute should be reconciled to avoid rendering any portion of the statute meaningless. *See Gager v. Mobile Oil Corp.,* 547 F.Supp. 854, 862 (D.Conn.1982). Furthermore, specific statutory provisions should take precedence over more general provisions. *Id.* To allow claimants who are conclusively presumed to have accepted a reorganization plan to object to that plan at the confirmation hearing would vitiate the effectiveness of § 1126(f).

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 386 (1984), there had been some debate as to whether a class which was unimpaired as a matter of law could nonetheless vote to reject the plan. *See In re Jones, supra,* 32 B.R. at 954, 955, n. 5, 6. Still other debate had focused on the question of whether a class that was deemed to have accepted the plan under Code § 1129(a)(8), might still object to confirmation under the other subsections of 1129(a), and if the *class* could not object, did § 1126(f) eliminate the objection of a *holder* of a claim within such unimpaired class?[11] That debate, how-

---

**10.** *See supra* note 3 for text of 11 U.S.C. § 1126(f).

**11.** It should be pointed out that the primary focus of this debate has been on the question of whether a class, unimpaired under § *1124(2),* might be entitled to object to confirmation under § 1129(a)(7)(A)(ii). Commentators such as Professor Triester argue that such an interpretation "if followed generally, would take away the usefulness from the debtor's standpoint of the non-impairment concept in the case of low interest bearing claims." *In re Jones, supra,* 32 B.R. at 955, n. 6, *quoting* Triester Recent Bank-

ever, has been quieted by the 1984 amendment to § 1126(f). Whereas, former § 1126(f) merely stated that "a class that is not impaired under a plan is deemed to have accepted the plan ...", subsection (f) now includes "each holder of a claim or interest of such class" who together with the class itself is conclusively presumed to have accepted.

It is highly unlikely that Congress would legislate the acceptance of a plan by an unimpaired class and its members so that the proponent of that plan could take advantage of favorable contract terms, but intend, nonetheless, to permit them to object to confirmation under the other subsections of 1129(a). The conclusion that acceptance extends to the whole plan is buttressed by the fact that the 1984 Amendments also modified § 1129(a)(7) so that its provisions now only apply to "each *impaired* class of claims or interests" rather than to "each class of claims or interests." (emphasis added) And that conclusion is particularly compelling in cases such as this, where unimpairment is derived from

§ 1124(3). Here the Banks are not, and would not be, directly, adversely, and pecuniarily affected by any defect in the Plan or the failure of the Proponent to successfully satisfy all obligations under the Plan. This result, however, does not eliminate the court's responsibility to determine whether the Proponents have satisfied their burden of proving that the Plan complies with all of the provisions of § 1129(a) necessary for confirmation.

### 3

### CONCLUSION AND ORDER

Accordingly, I conclude that the Banks are unimpaired, they are not aggrieved, and they lack standing to object to confirmation, AND IT IS SO ORDERED.

---

ruptcy Decisions, Opinions Reported in Various Services, May 1982—January 1983, at 392. It is clear that that question has no relevance to the facts in the instant proceeding where the secured creditors are to be paid the full allowed

amount of their claims in cash on the effective date of the plan under § *1124(3)*.