**In re WONDER CORPORATION OF AMERICA, Debtor.**

**Bankruptcy No. 5–86–00436.**

United States Bankruptcy Court, D. Connecticut.

Feb. 23, 1989.

Donald Lee Rome, Robert A. Izard, Jr., Robinson & Cole, Hartford, Conn., for Chase Manhattan Bank, N.A.

Douglas A. Strauss, David A. Greenberg, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Wonder Corp. of America.

Christopher R. Belmonte, Lane & Mittendorf, New York City, for Waldco, Inc.

## MEMORANDUM OF DECISION AND ORDER ON SUPPLEMENTAL APPLICATION FOR § 506(b) FEES

ALAN H.W. SHIFF, Bankruptcy Judge.

Chase Manhattan Bank, N.A. ("Chase"), has filed a supplemental application under Bankruptcy Code § 506(b) for fees charged by its attorneys, Robinson & Cole, subsequent to a March 20, 1987 deadline established by this court's March 4, 1987 scheduling order. Wonder Corporation of America, Inc. ("Wonder"), and Waldco, Inc., the joint proponents ("Proponents") of a confirmed chapter 11 plan, object. A review of past events provides useful perspective, particularly where, as here, the controver-

sy is one of a series of disputes between these parties over fees.[1]

## BACKGROUND

On June 23, 1986, Wonder filed a petition under chapter 7 of the Bankruptcy Code. On September 18, 1986, the case was converted to chapter 11. On February 3, 1987, the Proponents filed their original disclosure statement and plan, which provided that Chase was to be paid, on the effective date of the plan, cash equal to the allowed amount of its secured claim, including its allowed § 506(b) attorneys fees and related costs.[2] *See In re Wonder Corp. of America*, 72 B.R. 580, 590 (Bankr.D.Conn.1987), *aff'd sub nom. Chase Manhattan Bank, N.A. v. Wonder Corp. of America (In re Wonder Corp. of America)*, 82 B.R. 186 (D.Conn.1988). In support of its application for fees under § 506(b), Chase submitted time sheets listing 1,290 hours aggregating $176,881.00 and expenses of $11,123.00. The Proponents opposed that application.

On April 28, 1987, this court disallowed a substantial number of the hours claimed by Chase, finding that

at least as early as February 3, 1987, when the proponents filed their original disclosure statement and plan, the Banks [including Chase] knew that they were to be paid in cash on the effective date of the plan under § 1124(3).

. . . .

Accordingly, there was never any appreciable risk at any time that any Bank would not be paid in full in accordance with applicable bankruptcy law.

*Id.* Reviewing that decision on appeal, the District Court found

that substantial evidence exists on the record to support the conclusion that a large portion of Chase's claim reflected unreasonably excessive duplication and a determined effort to frustrate the bankruptcy proceedings. The decision to disallow a significant portion of Chase's claim, therefore, was quite appropriate under the circumstances.

*Wonder, supra*, 82 B.R. at 192.

Chase's supplemental application, now under consideration, seeks $26,005.00 for reimbursement of attorneys' fees for services rendered in four categories, to wit: (1) appeals from orders relating to the approval of the disclosure statement, standing, and the confirmation of the plan; (2) an objection to the post-confirmation modification of the plan; (3) negotiations for an escrow agreement; and (4) an objection to the modification of the escrow agreement.

## DISCUSSION

### A.

Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.A. § 506 (West Supp.1988). Section 506(b) "codifies pre-Code law that an *oversecured* creditor can assert, *as part of*

---

**1.** *See In re Wonder Corp. of America*, 72 B.R. 580 (Bankr.D.Conn.1987) (attorney's fees under § 506(b)), *aff'd sub nom. Chase Manhattan Bank, N.A. v. Wonder Corp. of America (In re Wonder Corp. of America)*, 82 B.R. 186 (D.Conn. 1988); *In re Wonder Corp. of America*, 81 B.R. 221 (Bankr.D.Conn.1988) (jurisdiction after appeal); *Wonder Corp. of America and Waldco, Inc. v. Chase Manhattan Bank, N.A. and Robinson & Cole v. Pullman, Comley, Bradley & Reeves and Lane & Mittendorf (In re Wonder Corp. of America)*, Ch. 11 Case No. 5–86–00436, Adv. No. 5–88–0070 (Bankr.D.Conn. filed May 31, 1988) (Proponents' action for sanctions under Bankruptcy Rule 9011 and 28 U.S.C. § 1927, Chase's counterclaim for sanctions under Bankruptcy Rule 9011).

**2.** On February 20, 1987, the Proponents filed an Amended Disclosure Statement and Amended Joint Plan of Reorganization. That plan was amended again on February 25, 1987, and modified on March 19, 1987. None of the changes altered the provision that Chase was to be paid the full amount of its allowed claim. *In re Wonder Corp. of America*, 70 B.R. 1018, 1019 n. 2 (Bankr.D.Conn.1987).

*its secured claim,* its right to interest and costs arising under its credit agreement." *United Merchants and Mfrs., Inc. v. Equitable Life Assurance Soc'y of the United States (In re United Merchants & Mfrs., Inc.),* 674 F.2d 134, 138 (2d Cir.1982) (emphasis in original). The credit agreement, however, must be viewed in the context of § 506(b) and the broader constraints of the Bankruptcy Code. *Wonder, supra,* 72 B.R. at 588. Thus, "[i]t is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, but where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of discretion, to disallow fee and costs under § 506(b)." *Id.* at 591.

### B.

Chase contends that the four categories of fees itemized in its supplemental application are recoverable under the terms of its credit agreement with Wonder and are reasonable within the meaning of § 506(b). *Category 1:*

*Services rendered in connection with appeals from orders relating to the approval of the disclosure statement, standing, and the confirmation of the plan of reorganization.*

■ On April 3, 1987, Chase filed notices of appeal from the March 25, 1987 decision that, as an unimpaired creditor, Chase had no standing to object to the Proponents' plan of reorganization, *In re Wonder Corp. of America,* 70 B.R. 1018 (Bankr.D. Conn.1987), and the March 27, 1987 order approving the disclosure statement. On April 20, 1987, Chase filed a notice of appeal from the April 7, 1987 order confirming the amended plan as modified on March 19, 1987. On July 26, 1987, the District Court granted Chase's motion for the voluntary dismissal of all three appeals.

Chase contends that its appeals were prompted by provisions in the Proponents' plan which would have transferred Chase's collateral free and clear of its liens before Chase was paid the full amount of its allowed secured claim, including its claim for § 506(b) fees, and that once a stipulation which is the subject of category (3) was approved, its appeals were withdrawn as moot. *Supplemental Application ¶ 7a, at 3–4.* That argument is directly contradicted by the express language of the March 19, 1987 amended, modified plan which was confirmed in open court at the conclusion of the March 20, 1987 confirmation hearing. *See April 7, 1987 Order.* In relevant part that plan provided:

> There shall be no transfer of property of the Debtor until the Payment Date, at which time the full allowed amount of the Class 3 and Class 4 Claims [including that of Chase] will be paid in cash.[3]

*March 19, 1987 Modification of Plan ¶ 3, at 2.* Thus, two to four weeks before it filed its appeals, Chase knew that there would be no transfer of its collateral until it was paid the full amount of its allowed claim in cash.

Moreover, on April 28, 1987, I held that Chase's opposition to the disclosure statement and plan was a "blatant and totally unproductive obstruction in the administration of this case …," *Wonder, supra,* 72 B.R. at 592, and that no § 506(b) fees would be allowed for such services.

> [D]espite the fact that the Proponents proposed to pay the full amount of the Banks' allowed claims on the effective date of the plan, the attorneys for the banks performed in excess of 300 hours in connection with the disclosure statement and plan, the effect of which was to delay the process by which their clients were to be paid. They would have spent even more time but their efforts to present lengthy testimony at the disclo-

---

**3.** "Payment Date" (the effective date of the plan) is defined in the disclosure statement as "the 20th business day following the date on which the Confirmation Order becomes a Final Order." *February 20, 1987 Amended Disclosure Statement at 6.* "Final Order" is defined as "an order

or judgment which has not been reversed, stayed, modified or amended and as to which no appeal is pending and the time to appeal and to seek leave to appeal or to seek review or rehearing has expired." *Id.* at 5–6.

sure statement and confirmation hearings were rejected on the basis that the disclosure statement needed no clarification, and as creditors, unimpaired as a matter of law, see § 1124(3), they had no standing to object to confirmation, *see* Memorandum of Decision, March 25, 1987.

*Id.* at 593. That decision was affirmed on appeal and is now the law of this case. It would be bizarre and inconsistent with my prior ruling if I were now to conclude that services relating to the withdrawn appeals from the orders on the disclosure statement, standing, and confirmation of the plan were reasonable under § 506(b).

Since Chase was at all times fully secured and there was never any valid question regarding the full payment of principle and interest on the effective date ("payment date") of the plan, it is apparent that Chase's primary objective was the payment of its claim for fees under § 506(b). It is likely that the true motivation for the appeals was to create bargaining chips to be used to pressure the Proponents to withdraw their objections to Chase's fee application. A similar concern was expressed in the April 28, 1987 order on § 506(b) fees, when I pondered whether Chase's purpose was "to manage, orchestrate, and control Wonder's reorganization, including the amount that would be allowed as fees under § 506(b) ...," by attempting "to trade peace during the confirmation process for acquiescence by the Proponents not to dispute their request for the allowance of § 506(b) fees." *Id.* at 594. A conclusion to that effect is supported by the fact that when an escrow fund was created to satisfy any § 506(b) fees allowed if Chase succeeded in its appeal of the April 28th decision, Chase withdrew its appeals from the decisions on the disclosure statement, standing, and confirmation of the plan.

*Categories 2, 3, and 4:*

*2. Services relating to the post-confirmation modification of the plan.*

■ On April 30, 1987, the Proponents moved to modify their plan to permit them to transfer Chase's collateral free and clear of its interest, provided payment was made

to Chase of the full amount of its allowed secured claim, including its allowed § 506(b) fees. Chase objected because the modified plan did not preserve its collateral to secure any fees to which it would be entitled if it prevailed on its appeal from the order on those § 506(b) fees.

*3. Services relating to negotiations for an escrow agreement.*

By a stipulation dated May 13, 1987, an escrow agreement was established under which funds were deposited sufficient to secure the § 506(b) fees of Chase and another bank which were disallowed by the April 28, 1987 order, which they hoped to gain from their appeals of that order. Chase argues that the "Court's approval of the stipulation demonstrates that the stipulation was appropriate and that Chase's efforts in connection therewith were reasonable." *Supplemental Application ¶ 7c, at 6.*

*4. Services relating to objection to the modification of the escrow agreement.*

On August 3, 1987, after the other bank withdrew its appeal, Wonder moved to modify the escrow agreement. Chase objected, and the motion was denied because the stipulation specifically provided that if one bank

> withdrew its appeal or was awarded less than its proportionate share of the amount escrowed, the entire escrowed amount would remain available to satisfy the claims of the remaining creditor. This amount was to remain available as a source of funds for any additional fees and expenses which the remaining creditor might be allowed.

*November 5, 1987 Order ¶ 2, at 2.*

The prepetition agreements between Wonder and Chase contained the following clause:

> The undersigned [Wonder] will pay to the Bank all expenses (including expense for legal services of every kind) of, or incidental to, the enforcement of any of the provisions hereof or of any of the Liabilities, or any actual or attempted sale, or any exchange, enforcement, col-

lection, compromise or settlement of any of the Security or receipt of the proceeds thereof, and for the care of the Security and defending or asserting the rights and claims of the Bank in respect thereof, by litigation or otherwise, including expense of insurance; and all such expenses shall be indebtedness within the terms of this note.

Broad as that language may be, it does not make Wonder liable for the payment of fees incurred in connection with attempts to collect an amount which is not owed. Moreover, regardless of the scope of the credit agreement, the constraints of § 506(b) limit Chase to an allowance of reasonable fees incurred protecting an interest in Wonder's property. *See United Merchants, supra,* 674 F.2d at 140; *Wonder, supra,* 82 B.R. at 190; *Wonder, supra,* 72 B.R. at 587. Thus, where, as here, Chase's interest in Wonder's property is a lien intended to secure a debt, if there is no debt, there is no viable security interest and no allowed secured claim under § 506(b).

In the final analysis, Chase's activities under categories 2, 3 and 4 were directed toward the preservation of collateral to secure the collection of § 506(b) fees claimed by Chase but disallowed by this court's April 28th order. Wonder never had an obligation to pay those § 506(b) fees. An award of fees under § 506(b) for services in these categories would require me to conclude that at some point Wonder did owe those disallowed fees to Chase. That conclusion is unwarranted.

### C.

Wonder's objection to Chase's supplemental application is sustained, the reimbursement Chase seeks is disallowed in full, and IT IS SO ORDERED.