**In re POTOMAC IRON WORKS, INC., Debtor.**

**Bankruptcy No. 93–1–6031–PM.**

United States Bankruptcy Court, D. Maryland, at Greenbelt.

Dec. 8, 1997.

---

Janet M. Nesse, Silverspring, MD, for Debtor.

Sylvia Brokos, Baltimore, MD, for State of Maryland.

Margery Lieber, Washington, DC, for Special Litigation, N.L.R.B.

Christopher Hamlin, Greenan, Walker, Trainor & Billman, Greenbelt, MD, for Unsecured Creditors Committee.

Mark Blank, Washington, DC, for Pension Benefit & Guaranty Corp.

Julie Mack, Greenbelt, MD, U.S. Trustee.

Marc Albert, Alexandria, VA, Court Appointed Examiner.

Gregory Hrebiniak, Justice Department, Tax Division, Washington, DC, for U.S., Internal Revenue Service.

Mark Sorrentino, State of Maryland, Atty. Generals Office, Baltimore, MD, for Unemployment Insurance Contribution.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

Before the court for determination is a discrete issue presented by the Fourth Amended Plan of Reorganization of the debtor, Potomac Iron Works, Inc. ("Potomac Iron" or "debtor"). The issue presented is whether a Plan should be confirmed with an effective date more than one year from the date of confirmation. This court has jurisdiction pursuant to 28 U.S.C. § 1334 (District Courts have original and exclusive jurisdiction of all cases under Title 11), and 28 U.S.C. § 157(a) and Maryland District Court Local Rule 402 (all cases under Title 11 as proceedings arising under Title 11 or arising in or related to cases under Title 11 are deemed referred to the Bankruptcy Judges of this District). This action constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Following the hearing on confirmation of debtor's plan, final argument was set for January 7, 1998. In anticipation of that final argument, the court was requested to decide this one issue in order to narrow the scope of the argument presented.

For the reasons enumerated and discussed below, the court holds that in this instance one year is an unreasonable amount of time between the Confirmation Order and the Effective Date. The court will not confirm a plan containing such a provision.

## BACKGROUND

Debtor is a company that fabricates and installs ironwork on large construction projects for the government and for private entities. The vast majority of debtor's assets consist of accounts receivable, said at the time of filing to be approximately $1.4 million and at present said to be $3.28 million. Potomac Iron no longer functions as a going concern. During the debtor's bankruptcy Lewis Mulitz, former President of Potomac Iron, formed PICO Industries, Inc. ("PICO"). PICO took over debtor's existing contracts. The "success" of debtor's plan depends upon collecting these accounts receivable. The debtor believes that most will be collected in 1998.

The debtor's Fourth Amended Plan of Reorganization provides that on the Confirmation Date all assets shall be distributed to the Liquidating Trust under the control of the Liquidating Trustee. The "Confirmation Date" is defined as, "the date of entry of the Confirmation Order." Debtor's Fourth Amended Plan, p. 4. On or before the Effective Date, Priority Tax Claims under 11 U.S.C. § 507(a)(8) and Administrative Tax Claims under 11 U.S.C. § 507(a)(1) will be paid in full out of the Liquidating Trust. The Effective Date is defined as, "the one year anniversary of the date that is fifteen (15) calendar days after entry of the Confirmation Order unless an appeal is filed, in which case it shall mean fifteen (15) calendar days after the date that the Confirmation Order becomes final and non-appealable." Debtor's Fourth Amended Plan, p. 4. Debtor contends that this additional time is necessary to close out the receivables while completing current contracts so as to avoid a loss of receivables due to charge backs and set offs. The taxing authorities object to the plan. They assert that the majority of the accounts receivable are not collectable and

that additional delay will enable debtor's successor to operate with debtor's assets and will further deplete the funds to be distributed.

## DISCUSSION

Can Potomac Iron satisfy its 11 U.S.C. § 507(a)(1) post-petition tax obligations under 11 U.S.C. § 1129(a)(9)(A) and its 11 U.S.C. § 507(a)(8) pre-petition tax obligations under 11 U.S.C. § 1129(a)(9)(C), by setting the Effective Date on the first anniversary of the Confirmation Date? 11 U.S.C. § 1129(a)(9) provides:

### § 1129. Confirmation of Plan.

(a) The court shall confirm a plan only if all of the following requirements are met:

\* \* \* \* \* \*

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such a claim, the plan provides that—

\* \* \* \* \* \*

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, **on the effective date of the plan,** the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

\* \* \* \* \* \*

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, **as of the effective date of the plan,** equal to the allowed amount of such claim. [boldface added].

\* \* \* \* \* \*

The term, "effective date" appears in numerous places in the Bankruptcy Code, particularly in sections dealing with plan confirmation and in the discharge provisions in chapters 12 and 13.[1] The Code does not define "effective date." Generally, the "effective date" is understood as the date upon which distributions commence. Benjamin Weintraub and Michael J. Crames provide the following analysis of the term "effective date" and its importance:

> Effective date is the date upon which a confirmed plan becomes operative and distribution of cash or property is commenced. In essence, it is the point in time when the plan can and should be susceptible of implementation and commencement of the operation of its provisions. The date is important to claimants and interest holders because of the distribution to them of value whether it is money or other property. Weintraub & Crames, *Defining Consummation, Effective Date Of Plan Of Reorganization And Retention Of Postconfirmation Jurisdiction: Suggested Amendments To Bankruptcy Code And Bankruptcy Rules,* 64 Am. Bankr.L.J. 245, 276 (1990).

Weintraub and Crames emphasize the need of a "definitive date upon which both debtors and creditors can anticipate the commencement of the operation of the plan and the distribution of the consideration, starting with the date of the entry of the order of confirmation." *Id.* at 279.

> A provision in the plan that payment is to be made on the effective date of the plan is too vague, as is one that gives the court the option to set such date. Effective date for the plan of reorganization should be precisely defined in order to remove all uncertainty as to the date the plan becomes operative so that the value

---

1. Places where "effective date" appears in the Code:
 a) § 943 (b)(5) Confirmation
 b) § 1129 Confirmation of plan
 §§ (a)(7)(A)(ii), (a)(7)(B), (a)(9)(A), (a)(9)(B)(i), (a)(9)(B)(ii), (a)(9)(C), (a)(12), (a)(13), (b)(2)(A)(i)(II), (b)(2)(B)(ii), (b)(2)(C)(i)
 c) § 1145 (d) Exemption from securities laws
 d) § 1173 (a)(2) Confirmation of plan (Railroad)
 e) § 1225 Confirmation of plan
 §§ (a)(4), (a)(5)(B)(ii), (b)(1)
 f) § 1228 (b)(2) Discharge
 g) § 1325 Confirmation of plan
 §§ (a)(4), (a)(5)(B)(ii), (b)(1)
 h) § 1328 (b)(2) Discharge

of the property to be distributed under the plan becomes certain. *Id.* at 280.

 The effective date plays an impor- tant role in valuation and should therefore be set forth in the plan with specificity. The more troubling issue is when the effective date should be. For this proposition there have been two, not necessarily contradictory, schools of thought. The first states that the effective date should bear some reasonable relationship with the confirmation date. In other words, the effective date should be on or close to the date in which the order con- firming the plan is entered. *See, In re Jones,* 32 B.R. 951, 958 n. 13 (Bkrtcy.D.Utah 1983). The second proposition is that the effective date should be the date in which the confirmation is final; i.e. the date the final order is entered. Debtor espouses a third school that the effective date be fixed at a time that the debtor will have funds available to meet the requirements of 11 U.S.C. § 1129(a)(9)(A).

In *In re Rolling Green Country Club,* 26 B.R. 729 (Bkrtcy.D.Minn.1982), the proposed plan left open the payment of creditors "out of the proceeds of liquidation on an effective date defined to be such date as the proceeds of liquidation in the hands of the trustee become sufficient to effect the required pay- ments." *Id.* at 730. The court held that the term "effective date" must be given a reason- able reading and mean within a "reasonable" time. *Id.* at 735. The court held that such a effective date as contemplated by this plan would be illusory in that it leaves open the option of the trustee to make no distribution for "failure to accumulate sufficient funds to make the payments otherwise contemplated by the plan." *Id.* at 734.

In *In re Krueger,* 66 B.R. 463 (Bkrtcy. S.D.Fla.1986), the court held that an effective date of four months after confirmation is unreasonable, in that it "defeats the purpose of the statutory requirement that the taxing authority receive the equivalent of immediate full payment in cash." *Id.* at 465. The court further held that the debtor's proposal im- pairs the taxing authorities by requiring them to partially subsidize the debtor's plan. *Id.*

In *In re Jones, supra,* the court explained the importance for purposes of valuation of setting the effective date reasonably close to the confirmation date:

> The entry of an order confirming a chapter 11 plan has far-reaching statutory effects independent of the effective date of the plan. This fact supports placing the effec- tive date on or close to the date of the entry of the order confirming the plan. "The effective date of the plan" is express- ly designated as the critical point for the major financial standards for confirmation. The valuations required by these sections are likely to be less accurate if the effec- tive date is not close to the date of the hearing on confirmation. *In re Jones,* 32 B.R. 951, 958 n. 13 (Bkrtcy.Utah 1983). [citations omitted].

Many cases have departed from the "rea- sonableness" standard for setting the effec- tive date by holding that the effective date should be on or shortly after the date the final order is entered. In support of this proposition is an often cited quotation from an article by Kenneth N. Klee, in an article published shortly after the enactment of the Bankruptcy Reform Act of 1978, entitled, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code,* 53 Am. Bankr.L.J. 133 (1979): "The 'effective date' of the plan is not a defined term but usually would be the first day after which the order of confirmation becomes final." *Id.* at 137; *see also,* 4 Norton Bankr.L. & Prac.2d § 92:17 ("Absent any conditions to the plan, the effective date will often be when the order of confirmation is final").

Recently, Professor Klee urged the propo- sition that the effective date be set reason- ably close to the confirmation date. In an article addressed to the work of the National Bankruptcy Review Commission published in the American Bankruptcy Law Journal in Fall, 1995, Professor Klee recommended:

> A few key provisions of § 1129 of the Code use the term "effective date" of a plan of reorganization without defining it. It is clear to most practitioners and others in the bankruptcy arena that the "effective date" may be a different date than the date of confirmation of the plan, and often

plans define the effective date. Nevertheless, it would be useful for the Commission to recommend that Congress enact a provision defining the term "effective date" to be the date on which the provisions of a plan of reorganization become effective and binding on the parties. The statute might also specify that the effective date bear some reasonable relationship to the confirmation hearing date. At the very least, § 1123(a) should be amended to require a plan to define its effective date. This all-important date should not be left to conjecture or undue manipulation. Klee, *Adjusting Chapter 11: Fine Tuning The Plan Process*, 69 Am. Bankr.L.J. 551, 560–61(1995). [footnotes omitted]

In *In re Jones, supra,* the United States Bankruptcy Court for the District of Utah held that the effective date should be reasonably close in proximity to the confirmation date. In the same year, the court considered the issue of whether a plan which set the effective date 30 days from the date of the final order is confirmable. *See, In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159 (Bkrtcy.Utah 1983). In *Loveridge,* the court recognized that an effective date set 30 days after the final order could mean anywhere between thirty days and a few years, depending upon whether an appeal is taken. However, the court conceded that where the interest rate of the claim on the effective date is agreed upon by both parties prior to confirmation, an effective date set after the final order is permissible.

> The application of Section 1129(b) to a plan which delays its effective date until after the resolution of any possible appeals may be illusory and, therefore, the confirmation of a plan using an illusive definition of the term "effective date" may be so speculative as to be meaningless. On the other hand, if the only issue at confirmation is the propriety of a given method of calculating an interest rate under Section 1129(b) and if other confirmation standards have been satisfied no matter which method is ultimately selected, a definition like the one used in this case may be permissible. *Id.* at 167.

In *In re Wonder Corp. of America,* 70 B.R. 1018 (Bkrtcy.Conn.1987), the court held that delaying the effective date to a time after the confirmation order is no longer appealable (i.e., "20th business day following the date on which the confirmation order becomes a final order") was not so unreasonable as to conflict with the equitable balances set by Chapter 11. *Id.* at 1020; *see also, Continental Securities v. Shenandoah Nursing Home,* 188 B.R. 205, 216 (W.D.Va.1995), *aff'd* 193 B.R. 769 (1996), *aff'd without opinion,* 104 F.3d 359 (C.A.4 1996); *In re T–H New Orleans Ltd. Partnership,* 188 B.R. 799, 805 (E.D.La. 1995), *aff'd,* 116 F.3d 790 (C.A.5 1997). While maintaining that the effective date cannot be indefinite or distant, the court in *Wonder Corp.* noted that it is not uncommon for a plan to fix the effective date to a time after the final order, "in recognition of a prospective lender's reluctance to advance funds until the appeal period has passed." *Id.* at 1020–21. The court reasoned that while requiring that the effective date be within a reasonably short period after the confirmation date "may be conceptually attractive, in the real world of bankruptcy reorganization, it may not be attainable". *Id.* at 1020.

This court agrees with the holding in *Wonder Corp.* that setting the effective date on or shortly after the final order is reasonable. Under this definition, any delay in the effective date would be initiated by the creditors themselves by taking an appeal. Thus, any loss suffered by the creditors as a result of the delay could be avoided by simply not taking the appeal. *Wonder Corp.,* at 1021. A creditor's argument that such a delay is unreasonable is a self-fulfilling prophecy. *Id.* In the case at hand, debtor seeks to set the effective date one year from confirmation not to exhaust the appeal process, but solely to buy extra time to collect account receivables.

Because of debtor's failure to pay post filing taxes when due, it has incurred substantial post-filing tax liability. Under 11 U.S.C. § 1129(a)(9)(A), this liability must be paid in cash upon the effective date of the plan. It does not have that cash—it may never collect that sum from the accounts receivable. In the meanwhile it wishes to

transfer the operating entity to PICO free of any concern for the unpaid administrative expenses and free of an concern for the failure of debtor's plan.

Debtor forces the taxing authorities to bear all the risk of the plan. In sum, the Internal Revenue Service and the State of Maryland have been waiting patiently for over four years for a distribution from the bankruptcy estate. Their positions have worsened with debtor's failure to pay post-filing trust fund taxes. An appropriate order will be entered.