### In re YATES DEVELOPMENT, INC., Debtor.

#### No. 98–6579–3P1.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 5, 2000.

W. David Talbert, II, Jacksonville, FL, for Yates Development, Inc.

Betsy Cox, Robert Altman, Jacksonville, FL, for Old Kings Interchange, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon a confirmation hearing on Debtor's Plan of Reorganization. After hearings on May 2, 2000 and June 27, 2000, the Court instructed the parties to submit briefs and proposed findings of fact and conclusions of law in lieu of oral argument, which the parties submitted on September 29, 2000. The Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On May 22, 1998 Yates Development, Inc. ("Debtor") and Old Kings Interchange, Inc. ("Old Kings") entered into an option agreement (the "Option Agreement") by which Old Kings as optioner granted Debtor as optionee two exclusive options, the first of which was to purchase a 500 acre parcel of property in Flagler County, Florida. Debtor exercised the first option and purchased the 500 acre parcel.

2. Putnam State Bank ("Putnam") held a promissory note secured by a mortgage on the 500 acre parcel.

3. The second option was to purchase a 210 acre parcel of property in Flagler County, Florida. Paragraph four of the Option Agreement provides as follows as to the second option:

> Optionee shall retain the exclusive option to purchase the balance of the Property as described in Exhibit C (Second Option Property) for the sum of Two Million Eighty Thousand Dollars and NO/100 ($2,080,000.00) plus the Additional Sum. Said Second Option shall expire on August 15, 1998 at 6:00 p.m. All payments by the Optionee shall be by official bank check, cashiers check or wire transfer of funds. In the event the Optionee fails to exercise the First Option, then this Second Option shall be null and void. Optionee shall notify Optionor in writing by facsimile as to the date Optionee intends to exercise the Second Option.

(Debtor's Ex. 6.)

4. Additionally, paragraph twelve of the Option Agreement provides as follows:

> *TIME OF THE ESSENCE:* Time shall be of the essence with respect to each provision of this Agreement that requires action to be taken by either party within a stated period of time, or upon a specified date. Notwithstanding the foregoing, if for any reason this Option Agreement is ex-

tended beyond August 15, 1998 and Optionee is entitled to exercise the Option beyond the August 15, 1998 date, then the Purchase Price shall be increased by the sum of Five Thousand Dollars and NO/100 ($5,000.00) per day for every day after August 15, 1998 until the ultimate Closing Date.

(Debtor's Ex. 6.)

5. On August 14, 1998 Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Doc. 1.)

6. By operation of 11 U.S.C. § 108(b), Debtor's right to exercise the second option was extended to sixty days from the date of the filing of the petition. (Doc. 30.)

7. On October 13, 1998 Debtor filed Motion to Assume Executory Contract for the purpose of subsequently exercising the second option. (Doc. 19.)

8. On December 23, 1998 the Court entered Order Denying Debtor's Motion to Assume Executory Contract. (Doc. 30.)

9. On March 3, 1999 Debtor filed Renewed Motion to Assume Executory Contract. (Doc. 35.)

10. On April 29, 1999 the Court entered Order Granting Debtor's Renewed Motion to Assume Executory Contract. (Doc. 59.)

11. On June 7, 1999 Debtor filed an adversary proceeding (the "Adversary Proceeding") requesting that the Court determine that the provision in paragraph twelve of the Option Agreement, which required the payment of $5,000.00 per day from August 15, 1998 until the closing date, was not enforceable under 11 U.S.C. § 365 and applicable state law. (Adv.Doc. 1.)

12. The parties filed cross motions for summary judgment. (Adv.Docs. 5, 13.)

13. On September 30, 1999 the Court held a hearing on the summary judgment motions. (Adv.Docs. 18, 19.)

14. On November 18, 1999 the Court entered Findings of Fact and Conclusions of Law (Adv.Doc. 21) and a judgment in favor of Old Kings and against Debtor. (Adv.Doc. 22.) Paragraph three of the judgment provided: "Paragraph 12 of the Settlement and Option Agreement dated May 22, 1998 shall be enforced in accordance with its terms, including without limitation, the addition of $5,000.00 per day to the purchase price for the subject property from August 16, 1998 through the ultimate closing date on the property." (*Id.*)

15. On November 29, 1999 Plaintiff filed Motion for Reconsideration and Clarification of Judgment and Findings of Fact and Conclusions of Law dated November 18, 1999. (Adv.Doc. 23.)

16. On January 25, 2000 the Court entered Order Denying Plaintiff's Motion for Reconsideration. (Adv.Doc. 36.)

17. Debtor filed a Notice of Appeal of the Court's November 18, 1999 Judgment and the Court's January 25, 2000 Order Denying Plaintiff's Motion for Reconsideration. (Adv.Doc. 37.) The proceeding came before the Honorable Harvey E. Schlesinger, United States District Judge, Middle District of Florida, Jacksonville Division. (Case No. 3:00–cv–249–J–20.)

18. On August 14, 2000 the District Court entered an order affirming the Court's November 18, 1999 Judgment in favor of Old Kings and against Debtor. (Adv.Doc. 45.)

19. On August 30, 2000 Debtor filed a notice of appeal to the Eleventh Circuit Court of Appeals of the District Court's August 14, 2000 order. (Adv.Doc. 46.)

20. Debtor has not exercised the second option. (Debtor's Ex. 6.)

21. On August 12, 1999 Old Kings filed a proof of claim which the Clerk's Office designated as Claim 2. The claim listed $2,093,000.00 as the total amount of the claim at the time the case was filed. An attached itemization indicated that, in addition to the $2,093,000.00, the claim was

comprised of additional sums of i) $13,000.00 (pursuant to paragraph three of the option agreement), and ii) $1,810,000.00 ($5,000.00 per day from August 16, 1998 until August 12, 1999, pursuant to paragraph twelve of the Option Agreement).

22. On October 26, 1999 Debtor objected to Claim 2 contending that any additions to the claim beyond the face amount were invalid. (Doc. 103.)

23. On January 3, 2000 the Court entered Order Sustaining in Part and Overruling in Part Objection to Claim 2. (Doc. 116.) Paragraph two of the order provided "[t]he claim is allowed based on the face amount of the claim in the amount of $2,093,000.00 without prejudice to the filing by Old Kings Interchange, Inc. of a motion to amend the claim." Paragraph three of the order provided "[s]ubject to a motion to amend, the claim is disallowed to the extent the itemization attached to the claim exceeds the face amount of the claim." (*Id.*)

24. On February 2, 2000 Old Kings filed Amended Proof of Claim which the clerk's office designated as Claim 3. The claim listed the following as the "total amount of claim at time the case was filed":

> $2,093,000.00 plus $2,540,000.00 as of January 6, 2000 ($5,000.00 per day from 8/16/98 to 1/6/00), plus $5,000.00 per day from 1/6/00 to the actual purchase date of the real property, as established by the Settlement and Option Agreement dated May 22, 1998 and the Judgment and Findings of Fact and Conclusions of Law entered by this Court on November 18, 1999 in Adversary No. 99–171, all of which is contingent on whether the Debtor exercises the option to purchase and purchases the property pursuant to the Settlement and Option Agreement.

(Debtor's Ex. 6.)

25. On February 25, 2000 Debtor objected to Amended Proof of Claim filed by Old Kings to the extent the amount of the claim exceeded $2,093,000.00. (Doc. 127.)

26. On April 18, 2000 the Court entered Findings of Fact and Conclusions of Law and Order Overruling Objection to Old King's Amended Proof of Claim. (Docs. 138, 139.)

27. On April 28, 2000 Debtor filed a notice of appeal of this Court's Order Overruling Objection to Old King's Amended Proof of Claim in the United States District Court. (Doc. 140.) The District Court has not issued a ruling on the appeal.

28. Putnam did not file a claim or ballot in the case. On December 20, 1999 Putnam assigned its interest in the promissory note and mortgage on the 500 acre parcel to Alan D. Wisne ("Wisne"). (Debtor's Ex. 9.)

29. At the May 2, 2000 confirmation hearing, and with the consent of Old Kings, Debtor filed a ballot on behalf of Wisne accepting the plan. (Debtor's Ex. 15, Tr. May 2, 2000 at 8–12.)

30. On May 17, 1999 Debtor filed its Plan of Reorganization. (Doc. 66.)

31. The plan provides for the following classes of claims and interests:

I. Class 1 Claims–Allowed Administrative Claims–This class consists of only the claim of Baumer, Bradford, and Walters, P.A., Debtor's counsel.[1]

II. Class 2 Claims–Allowed Secured Claims–This class consists of the claim of Wisne.

III. Class 3 Claims–Allowed Unsecured Claims–This class consists of Old Kings' unliquidated, unsecured claim.

IV. Class 4 Interests–This class consists of interests of holders of common stock of Debtor.

---

1. Subsequent to the confirmation hearing, Baumer, Bradford, and Walters, P.A. became Smith, Gambrell & Russell, LLP.

(Doc. 66.)

32. Section 1.02 of the Plan defines an Allowed Claim with respect to any class as a claim:

(i) that has been allowed by a Final Order, (ii) that (x) either is scheduled, other than a Claim that is scheduled as disputed, contingent or unliquidated or (y) a proof of which has been filed on or before the Bar Date to which no objection has been filed within the time period set forth in the Local Rules, or (iii) that is expressly allowed in the Plan. An Allowed Claim shall not include a Claim any portion of which is a disputed, contingent or unliquidated claim.

(Doc. 66.)

33. On February 2, 2000 Debtor and Wisne entered into a mortgage and security agreement and promissory note by which Wisne agreed to loan Debtor $2,125,000.00 in exchange for a mortgage on the 210 acres owned by Old Kings. The principal and accrued interest is due on or before December 20, 2000. (Debtor's Ex. 12.) The transaction is contingent upon an appellate court ruling prior to December 20, 2000 that paragraph twelve of the Option Agreement is not enforceable. (Debtor's Ex. 15, Tr. May 2, 2000 at 46–48.)

34. Conrad Wagner, president of Debtor ("Wagner"), testified that the effective date of the plan would occur when an appellate court issues a ruling that the $5,000.00 per day increase in the purchase price is not enforceable. Wagner also testified that unless an appellate court issues such a ruling, Debtor does not intend to exercise the option and purchase the property. (Tr. June 27, 2000 at 14, 19–20.)

### CONCLUSIONS OF LAW

In order for a court to confirm a Chapter 11 plan, it must satisfy the requirements of 11 U.S.C. § 1129. The initial inquiry is whether the proposed plan complies with the requirements of § 1129(a). If all of the requirements of § 1129(a) except paragraph eight have been met, a proposed plan may still be confirmed under the provisions of § 1129(b). Where, as here, provisions of § 1129(a) other than paragraph eight have not been met, it is unnecessary for the Court to consider the requirements of § 1129(b).

Old Kings asserts that Debtor's plan does not satisfy the following subsections of § 1129(a): §§ 1129(a)(1), 1129(a)(3), 1129(a)(10), and 1129(a)(11).

### I. § 1129(a)(1)—Compliance with Applicable Provisions of Bankruptcy Code

Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1) (West 2000). Old Kings argues that Debtor's plan does not comply with §§ 1123(a)(1), 1123(a)(3), and 1123(a)(5).

### A. § 1123(a)(1)

Section 1123(a)(1) requires that a plan designate classes of claims. 11 U.S.C. § 1123(a)(1) (West 2000). Old Kings argues that the plan does not comply with § 1123(a)(1) because the plan, by its express language, does not include Old Kings' amended claim in the classes of claims it designates and defines. Old Kings points out that because the claim is contingent and unliquidated and because Debtor has appealed the Court's Order Overruling Objection to Old King's Amended Proof of Claim, the claim is not an allowed claim as defined by Section 1.02 of the plan. Debtor argues that Old Kings would have an allowed claim under the plan if Debtor elected to exercise the option and purchase the property in the future. As Old Kings points out, however, Debtor's reliance on the possibility that it may obtain a favorable appellate ruling sometime in the future at which point Old Kings' claim will become allowed, is too speculative to constitute a proper classification for Old Kings' claim. Consequently,

Debtor's plan does not comply with § 1123(a)(1).

### B. § 1123(a)(3)

■ Section 1123(a)(3) requires that a plan specify the treatment of impaired claims under the plan. 11 U.S.C. § 1123(a)(3) (West 2000). Old Kings argues that even if its claim is considered a Class 3 claim, it must be treated as impaired.[2] Debtor contends that Old Kings' claim is unimpaired. The Option Agreement provided that if it was extended beyond August 15, 1998 for any reason, thereby enabling Debtor to exercise the option beyond that date, the purchase price of the property would increase $5,000.00 per day after August 15, 1998 until the closing date. The Option Agreement was extended beyond August 15, 1998. The option has not been exercised. This Court and the District Court concluded that the $5,000.00 per day increase was enforceable.[3] Pursuant to the Option Agreement, the price for which Debtor could purchase the property if the closing date was December 5, 2000 is approximately $7,007,000.00. Debtor acknowledges that it will only exercise the option, remove the contingency, and purchase the property if it is successful on appeal. Debtor's unilateral ability and explicit intention to delay the closing date in hopes of obtaining a favorable appellate ruling clearly alter Old Kings' contractual rights and impair its claim. The failure of Debtor's plan to treat Old Kings' claim as impaired contravenes § 1123(a)(3).

### C. § 1123(a)(5)

■ Section § 1123(a)(5) requires that a plan provide adequate means for its implementation and sets forth a non-exclusive list of examples. 11 U.S.C. § 1123(a)(5)

(West 2000). Old Kings argues that Debtor's plan does not provide adequate means for its implementation because the "payment of claims under the Plan boils down to a series of circular provisions concerning the effective date which say nothing of substance." (Old Kings' Br. at 13.) Despite a valiant attempt to decipher the meaning of "Effective Date" as set forth in the plan, the Court was similarly befuddled. However, Wagner's testimony at the confirmation hearing made clear that the effective date of the plan will occur when and only if an appellate court issues a ruling that the $5,000.00 per day increase in the purchase price of the property is unenforceable. Otherwise, Debtor does not intend to exercise the option and purchase the property. Thus, the only circumstance under which an effective date exists is a future appellate ruling in Debtor's favor.

Although the Bankruptcy Code does not define effective date, it is generally understood to be the date upon which distributions begin. *See In re Potomac Iron Works, Inc.,* 217 B.R. 170, 172 (Bankr. D.Md.1997). Of paramount concern to claimants and interest holders, is the date upon which a plan's effective date will occur. There are two views as to when an effective date may occur. *See id.* at 173. Some courts hold that a plan's effective date should be on or close to the date on which a confirmation order is entered. *See In re Jones,* 32 B.R. 951, 958 n. 13 (Bankr.D.Utah 1983); *See also In re Krueger,* 66 B.R. 463, 465 (Bankr.S.D.Fla. 1986) (holding that effective date four months after confirmation hearing is unreasonable). Other courts have held that an effective date which occurs around the date a confirmation order becomes final is acceptable. *See In re Wonder Corp. of*

---

**2.** Section 1124 of the Bankruptcy Code provides in relevant part:

"[A] class of claims or interest is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
(1) leaves unaltered the legal, equitable, and contractual rights to which such claim

or interest entitles the holder of such claim or interest;"
11 U.S.C. § 1124 (West 2000).

**3.** *See supra* Findings of Fact ¶¶ 14 and 18.

*America,* 70 B.R. 1018, 1021 (Bankr. D.Conn.1987); *Potomac Iron Works,* 217 B.R. at 174. The holding in *Wonder Corp.,* however, was predicated upon the fact that any appeal, and thus any resulting delay in the case, would be instituted by the creditors, not the debtor. "This concern could be minimized if not completely avoided, since if the Banks do not create a delay, the effective date need be no later that 30 days after the entry of the Confirmation Order, at which time the Plan provides for the full case payment of their allowed claim." *Wonder Corp.,* 70 B.R. at 1021. In the instant case, any loss suffered by Old Kings would result from a delay in the effective date initiated by Debtor. While Debtor seeks a favorable appellate ruling as to the enforceability of the $5,000.00 per day increase in the purchase price and as to its Objection to Old Kings' Proof of Claim, Old Kings is forced to bear all of the risk of the delay. The Court holds that such an imposition renders the effective date unreasonable. Accordingly, the plan fails to comply with § 1123(a)(5).

## II. § 1129(a)(3)—Good Faith

 Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3) (West 2000). The Eleventh Circuit has established the principle that good faith is an implicit prerequisite to filing a Chapter 11 bankruptcy petition. *See In re Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984). The Eleventh Circuit has also held that "the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal." *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir.1987). Old Kings asserts that Debtor's Chapter 11 petition was not filed in good faith and points to the following factors as evidence thereof:

i) Debtor was not in default of its obligations to Putnam, the only other creditor in the case;

ii) Putnam had not taken any action against Debtor prior to the filing and there was no evidence it intended to do so;

iii) Debtor's only two motives in filing the case were to extend its right to exercise the option and to avoid paying the $5,000.00 daily increase in the purchase price; and

iv) The Option Agreement was an arm's length transaction negotiated only three months prior to the filing of the petition.

 Although, there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider any factors which evidence "an intent to abuse the judicial process of the reorganization provisions" or, in particular, factors which evidence that the case was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir.1988) (citing *In re Albany Partners, Ltd.,* 749 F.2d at 674). Evidence that Debtor filed the case to extend the right to exercise the option and to avoid paying the increase in the purchase price is insufficient to show bad faith on the part of Debtor in filing its bankruptcy petition, in light of the fact that the enforceability of the increase in the purchase price had not been adjudicated. Additionally, the evidence does not establish that the Debtor intended to abuse the judicial process or the reorganization provisions of Chapter 11. The Court does not find that the petition was filed in bad faith.

 Alternatively, Old Kings argues that Debtor's Chapter 11 plan was not proposed in good faith. Although good faith is not defined in the Bankruptcy Code, good faith requires that there be a "reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *McCormick v. Banc One Leasing Corp. (In re McCormick),* 49 F.3d 1524, 1526 (11th Cir. 1995). Old Kings contends that the plan

was filed only to relieve Debtor of its obligation to comply with paragraph twelve of the Option agreement and to pay the $5,000.00 per day increase in the purchase price. Old Kings asserts that the plan lacks good faith not because it was filed in order to *extend* the option date, but because it was filed to *alter* the Option Agreement. Debtor contends that the plan was not filed in bad faith because as of May 17, 1999, the date of the filing of the plan, the Court had not ruled that the $5,000.00 per day increase in the purchase price was enforceable. However, Debtor did not amend its plan subsequent to the Court's Judgment in favor of Old Kings in the Adversary Proceeding or its Order Overruling Objection to Old Kings' Amended Proof of Claim. The Court does not find that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Accordingly, the Court holds that the plan has not been proposed in good faith and therefore does not comply with § 1129(a)(3).

### III. § 1129(a)(10)—Acceptance by an Impaired Class

■ Section 1129(a)(10) requires that at least one class of impaired claims vote to accept the plan. 11 U.S.C. § 1129 (West 2000). Old Kings contends that the ballot cast in favor of the plan by Wisne, as Trustee of the Alan L. Wisne Revocable Trust, does not constitute a proper acceptance of the plan by an impaired class because neither Wisne nor his assignor, Putnam, filed a proof of claim in the case. Old Kings asserts that pursuant to Federal

Rule of Bankruptcy Procedure 3001(e)(1), Wisne should have filed a proof of claim to establish his right to vote. In light of the fact that the Court, upon the consent of Old Kings, permitted Wisne's ballot to be filed at the May 2, 2000 confirmation hearing, Old Kings' protest lacks merit.[4] Because at least one class of impaired claims has accepted the plan, the plan complies with § 1129(a)(10).

### IV. Feasibility—§ 1129(a)(11)

■ Section 1129(a)(11) mandates that a plan of reorganization be feasible.[5] Although success does not have to be guaranteed, the Court is obligated to scrutinize a plan carefully to determine whether it offers a reasonable prospect of success and is workable. *See In re Thurmon,* 87 B.R. 190, 191 (Bankr.M.D.Fla.1988). Debtor's plan, which contemplates purchase of the Property for $2,093,000.00, is not feasible for the same reason the Court determined that there are inadequate means for the plan's implementation. The only circumstance under which the plan can be effectuated is a future appellate ruling that the $5,000.00 per day increase is not enforceable. The Court cannot concern itself with the myriad twists and turns the case may take, but must instead concentrate on the facts before it. The law of the case is that paragraph twelve of the Option Agreement is enforceable. Accordingly, Debtor's plan, the success of which hinges entirely upon an appellate court ruling that paragraph twelve is not enforceable, is not feasible.

4. The Court also points out that because Debtor listed Putnam as a secured creditor on its schedule D, Putnam was not required to file a proof of claim to be treated as a creditor in the case for purposes of voting on the plan. *See* FED. R. BANKR. P. 3003(b)(1) and (c)(2). By virtue of the December 20, 1999 assignment, Wisne obtained whatever rights Putnam had. The issue is whether Wisne was entitled to cast a ballot after the deadline for filing ballots had passed, not whether he was required to file a proof of claim. Rule 3001(e)(1) does not create a requirement to

file a claim when one did not exist in the first instance. *See* FED. R. BANKR. P. 3001(e)(1).

5. Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

11 U.S.C. § 1129(a)(11) (West 2000).

## CONCLUSION

Because the plan does not comply with all of the requirements of 11 U.S.C. § 1129(a), specifically §§ 1129(a)(1), 1129(a)(3), and 1129(a)(11), the Court will deny confirmation and dismiss the case.[6] A separate order will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

6. Pursuant to 11 U.S.C. § 1112(b), the Court must either dismiss the case or convert it to Chapter 7. Debtor, Old Kings, and the United States Trustee request that the case be dismissed. (Doc. 158 at 33.)