In re CENTRAL EUROPEAN INDUS-
TRIAL DEVELOPMENT COMPA-
NY LLC d/b/a Ceidco, Debtor.

In re TKG Europe LP, Debtor.

In re The Kontrabecki Group
LP, Debtor.

Nos. 02–30419DM, 02–30420DM,
02–30421DM.

United States Bankruptcy Court,
N.D. California.

Jan. 2, 2003.

Robert A. Bartlett, Gregory S. Brow, Mark S. Kaufman, McKenna, Long and Aldridge, Atlanta, GA, Peter J. Benvenutti, Heller, Ehrman, White and McAuliffe, San Francisco, CA, Charles R. Campbell, Jr., Law Offices of Altheimer and Gray, San Francisco, CA, for creditors.

Joel K. Belway, Law Offices of Joel K. Belway, San Francisco, CA, Joan M. Chipser, Millbrae, CA, David Replogle, Law Offices of David Replogle, San Francisco, CA, for debtor.

Patricia A. Cutler, Office of the U.S. Trustee, San Francisco, CA, United States Trustee.

MEMORANDUM DECISION ON (1) MOTION TO DISMISS CHAPTER 11 CASE OF TKG EUROPE LP; (2) MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR SUBSTANTIVE CONSOLIDATION AND TENTATIVE ORDER DISMISSING TKG EUROPE LP CASE; AND (3) MOTION FOR STAY PENDING APPEAL

DENNIS MONTALI, Bankruptcy Judge.

I. *Introduction*

On November 15, 2002, Lehman Brothers Holdings, Inc. ("Lehman") filed a Motion To Dismiss ("Motion To Dismiss") the Chapter 11 case of TKG Europe LP ("TKGE"). On November 18, 2002, Central European Industrial Development Company, LLC d/b/a Ceidco ("Ceidco"), TKGE and The Kontrabecki Group LP ("TKG", and together with TKGE and Ceidco, "Debtors") filed a Motion For Substantive Consolidation of their Chapter 11 cases ("Motion To Consolidate"). On December 4, 2002, during a telephone conference with counsel, the court indicated on the record by way of tentative rulings that it would grant the Motion To Dismiss and deny the Motion To Consolidate.

The court held a hearing on December 6, 2002, on the two motions and on Decem-

ber 12, 2002, entered an order denying the Motion To Consolidate ("Order Denying Consolidation"). Debtors timely filed a Notice Of Appeal of that order.

On December 13, 2002, Debtors filed a motion for a stay ("Motion For Stay") of the Order Denying Consolidation and of the (still tentative) order granting the Motion To Dismiss.[1] Lehman has opposed that motion. On December 19, 2002, Debtors moved for an order shortening time on their motion for reconsideration of the Order Denying Consolidation and of the (still tentative) order granting the Motion To Dismiss ("Motion For Reconsidera-

tion"). On December 20, 2002, the court heard arguments of counsel concerning the request for shortened time and other matters.

The positions and legal theories of the parties are well known to the court and no purpose would be served by any further hearings on these matters.[2] Accordingly, the request for shortened time for a hearing on the Motion For Reconsideration will be denied as moot. For the reasons summarized below, the court will grant the Motion To Dismiss, stay the dismissal for ten days and deny the Motion For Reconsideration.[3]

1. Because of calendar congestion and the forthcoming holidays, as well as a desire to avoid frantic briefing and opposition, the court invited the Debtors to file their motion for a stay of the order granting the Motion To Dismiss before it was even issued. It assured counsel for Lehman it would not consider any such motion as the equivalent of a request for reconsideration and that it would consider Lehman's opposition to the motion, which it has. The court also observed that a motion for a stay of the Order Denying Consolidation made no sense because the cases are not consolidated and thus to stay an order denying consolidation would have no effect. All counsel seemed to agree with this observation during the December 20, 2002, hearing. Further, the order appears to be interlocutory, raising additional questions about the wisdom of the appeal of the order.

Earlier today the court was provided with a copy of the Bankruptcy Appellate Panel's Order Re Emergency Motion For Stay Pending Appeal filed December 31, 2002. The court also received Lehman's counsel's letter of December 31, 2002 complaining about Debtors' tactics of proceeding in two courts at the same time. To say the least, this court is also confused by Debtors' tactics. First, as noted above, seeking a stay of the Order Denying Consolidation is virtually meaningless. Second, the court has not until today issued any order granting the Motion To Dismiss. The court joins Lehman in questioning how there can be an appeal of an order that has not yet been entered.

2. Lehman's counsel's December 31, 2002 letter to the court states that at the December 20th hearing a briefing schedule for the Motion For Reconsideration was set. The court has reviewed the audio transcript of the hearing today and has confirmed that no specific briefing schedule was set. Rather, just before the conclusion of the hearing the court noted that it owed the parties a decision on "what to do about the Motion For Reconsideration.". Regardless of any expectations of any further briefing, based upon the court's views of the merits of the Motion For Reconsideration, as discussed below, there will be no further briefing here. Today's orders will divest this court of any further jurisdiction regarding the Motion To Dismiss, the Motion To Consolidate, the Order Denying Consolidation, the Motion For Stay, and any other related matters, unless and until the Bankruptcy Appellate Panel remands any of those matters to this court for further proceedings.

3. At the conclusion of the hearing on December 20, 2002 the court promised the parties a prompt ruling on the Motion To Dismiss and the Motion For Stay. That promise has been difficult to keep for a variety of reasons, not the least of which are the difficulties, complexities and importance of the issues presented. The court apologizes for the delay and wishes to assure Lehman that the interval between the December 20, 2002 oral argument and today was not created for the purpose of accommodating Debtors' counsels' personal schedules.

## II. *Discussion*

In its tentative ruling on the Motion To Dismiss the court noted that a debtor with only one creditor could not confirm a plan without the vote of that creditor, assuming it was impaired under the plan. No contrary argument convinces the court to depart from the tentative.

Debtors attempt to get around this problem in two ways. First, they seek substantive consolidation, so that Lehman would no longer be the only creditor of TKG. Second, Debtors suggest that they could propose a plan that would leave Lehman unimpaired. Neither tactic convinces the court to reconsider its tentative ruling or to stay dismissal beyond a short, ten-day period.

## A. *Substantive Consolidation* [4]

Debtors argue that consolidation is proper on the facts presented by this record. They rely heavily on *Bruce Energy Centre Ltd. v. Orfa Corp. of America (In re Orfa Corp. of Philadelphia)*, 129 B.R. 404 (Bankr.E.D.Pa.1991). In that case, however, it was not the debtors who sought consolidation of their three related entities; consolidation was sought by other plan proponents. Other creditors objected to consolidation via a plan and those objections were overruled. It is important to note that the court said that consolidation in the plan process places the issue before all debtors' creditors for a vote, a more democratic process than deciding by motion. 129 B.R. at 416.

■ As noted by this court during the tentative ruling on the Motion To Consoli-

---

4. The court previously expressed doubts about whether the appeal of the Order Denying Consolidation would prevent it from deciding the Motion For Reconsideration. Those doubts have been dispelled.

Although Fed. R. Bankr.P. 8002(b) is not as clear as it might be, the cases and the advisory committee notes clearly establish that the court has jurisdiction to hear a reconsideration motion, and the notice of appeal is held in abeyance until the motion is resolved. *Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1064 & n. 1 (9th Cir.2002) (under Fed. R.App. P. 4, trial court retained jurisdiction, notwithstanding notice of appeal, because Rule 60(b) motions prevented earlier notice of appeal from becoming effective until trial court ruled on those motions); *Enviropur Waste Refining And Technology, Inc. v. PRC–Patterson, Inc. (In re PRC–Patterson, Inc.)*, 174 B.R. 113 (9th Cir. BAP 1994) (noting that Fed. R. Bankr.P. 8002 contains language similar to Rule 4 of Fed. R.App. P., and that 9th Circuit "has ruled that the panel shall construe them in the same manner") (citation omitted). *See also Leader Nat'l Ins. Co. v. Industrial Indem. Ins. Co.*, 19 F.3d 444, 445 (9th Cir.1994) (under amended Rule 4, Fed. R.App. P., notice of appeal is no longer nullity but is "held in abeyance" until motion for reconsideration

is resolved); Advisory Committee Note to 1994 Amendments ("A notice filed *before the filing of one of the specified motions* [in Rule 8002(b)] or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the district court or bankruptcy appellate panel") (emphasis added); *Texas Comptroller v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 579 (5th Cir.2002) ("Bankruptcy Rule 8002 dictates that a number of postjudgment motions will render the underlying judgment nonfinal, both when filed before an appeal is taken—thus tolling the time for taking an appeal—*and when filed after the notice of appeal*—thus divesting the appellate court of jurisdiction and rendering the previously-filed notice of appeal 'dormant' until the postjudgment motion is adjudicated") (citation omitted, emphasis added); 10 L. King, *Collier on Bankruptcy* ¶ 8002.08, pp. 8002–13—8002–14 (15th ed. rev.1996) ("If a notice of appeal *has been filed before one of the motions* listed in Bankruptcy Rule 8002(b) and has been decided (and *certainly if filed before such a motion was even made*), the notice is 'ineffective' to effect an appeal until the entry of a motion [order?] disposing of the last pending post-decisional motion") (emphasis added).

date, substantive consolidation via a plan would require the affirmative vote of each class of each of debtors' creditors, counted *before* consolidation. As Lehman is the only creditor of TKGE, there could be no affirmative vote for such consolidation in view of its adamant opposition to Debtors' efforts in these cases. Stated otherwise, the democratic process found to be so critical by the court in *Orfa Corp.* dooms Debtors' theories here.

■■■ This court is bound to follow *Alexander v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir.2000). In that case the court noted that the primary purpose of substantive consolidation is to "insure the equitable treatment of all creditors." 229 F.3d at 764 (citing *Union Sav. Bank v. Augie/Restivo Baking Co. Ltd. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 (2d Cir.1988)). The court also noted two broad themes that have emerged in ordering substantive consolidation, namely that bankruptcy courts have been directed (1) to consider whether there is a disregard of corporate formalities and a commingling of assets of various entities; and (2) to balance the benefits that substantive consolidation would bring against the harms that it would cause. *Alexander*, 229 F.3d at 765. A proponent of substantive consolidation must satisfy one of *Alexander's* two familiar tests: either (1) that creditors dealt with the entities as a single economic unit and did not rely on the separate credit of each of the separate entities, or (2) that the operations of the entities were "excessively entangled" to the extent that consolidation would benefit all creditors. *Id.* at 766.[5]

■ Debtors contend that since Lehman caused the corporate structure to be created and dealt with the Debtors as a single economic unit, substantive consolidation is exactly what it bargained for. But that is totally contrary to the unescapable fact that Debtors and Lehman agreed to the structure and further, that plainly Lehman relied on the separation of the entities, notwithstanding their relationships with one another.[6]

Debtors infer that the corporate structure insisted upon by Lehman somehow amounts to an attempt to create a "bankruptcy-remote" entity, an evil they would cure by substantive consolidation. Their theory is unavailing. First, even if one or more Debtors or their affiliates is "bankruptcy-remote"—or at least "U.S. bankruptcy-remote"—Debtors have cited no law that would be violated by such a corporate structure. In any event, all three Debtors are eligible to be debtors in this court. Lehman's motion to dismiss premised on a bad faith filing has already been rejected by the court.

■ Second, substantive consolidation is one of "the bankruptcy court's general *equitable* powers . . ." (*Alexander*, 229 F.3d at 763, emphasis added) and it would not be equitable for this court to ignore the prepetition wishes of Lehman and the Debtors by disregarding the corporate structure the parties so carefully created by agreement. The fact that other unsecured creditors may lose their ability to be paid is neither equitable nor inequitable. It is the natural consequence of what might happen if Lehman successfully pursues the remedies set forth in Debtors' dire predictions.

5. All parties agree that Debtors' affairs here are not excessively entangled.

6. Furthermore, unlike many other substantive consolidation cases, here there was not even a common ownership. In fact, TKGE, along with a nondebtor, owns only half of Ceidco and Ceidco owns 99% of TKG, with the other 1% owned by a nondebtor. These are hardly facts that support substantive consolidation.

### B. *Hypothetical Plan Leaving Lehman Unimpaired*

■ Debtors rely on an as-yet nonexistent and unfiled plan, which they say will leave Lehman unimpaired such that a plan could be confirmed by TKGE without the vote of its only creditor. The court has been told that the plan will pay Lehman in full some day in the future after all the litigation is over and the claim is finally allowed. The plan would have an effective date sometime thereafter, so that Lehman could be paid in full on the effective date and therefore, allegedly, would be unimpaired.

The court is not convinced that this hypothetical plan—or a real one that might be filed next week that proposes to pay Lehman in full once its hotly contested claim is finally allowed—presents any reason to retain TKGE's bankruptcy case. If the court were to confirm such a plan next week Lehman still would have to wait an indefinite time, possibly years, before the plan could become effective. The court cannot see how this would leave Lehman's rights "unaltered" or would otherwise leave Lehman unimpaired under 11 U.S.C. § 1124. To begin with, the 1994 amendments to Section 1124 deleted the text that used to provide for payment on the effective date as one of the ways to leave a class unimpaired.

Moreover, even cases decided before the 1994 amendments refused to sanction an open-ended gap between confirmation and the effective date. As a leading case points out:

"The effective date of the plan" is expressly designated as the critical point for the major financial standards for confirmation. *See* §§ 1129(a)(7), 1129(a)(9), 1129(b). The valuations required by these sections are likely to be less accurate if the effective date is not close to the date of the hearing on confirmation.

*In re Jones,* 32 B.R. 951, 958 n. 13 (Bankr. D.Utah 1983).

In addition, Debtors' delayed and uncertain payment would unacceptably place all the risk on Lehman. Debtors have offered nothing to protect Lehman if Debtors' predictions are wrong—i.e., if Debtors cannot reduce Lehman's claim and pay it in full. *See In re Yates Development, Inc.,* 258 B.R. 36, 43 (Bankr.M.D.Fla.2000) (refusing to confirm plan with delayed and contingent effective date, where creditor "is forced to bear all the risk of the delay"). *Cf. Financial Security Assurance, Inc. v. T–H New Orleans Ltd. P'ship (In re T–H New Orleans Ltd. P'ship),* 188 B.R. 799, 805 (E.D.La.1995) (where debtor would continue to make cash collateral payments there was no prejudice in delays to effective date arising from appeal), *aff'd,* 116 F.3d 790 (5th Cir.1997).

■ Therefore, without Lehman's consent, the court could not confirm a TKGE plan that would leave a substantial and indefinite delay between any confirmation hearing and the effective date. *See generally* Novikoff & Gerschwer, *Effective Date; Post–Confirmation Jurisdiction; Serial Filing,* SG108 ALI–ABA 553 (June 27–29, 2002) (the "ALI–ABA Article").[7]

---

7. The court recognizes that under different circumstances a gap between the confirmation hearing and the effective date might be permissible. The *Jones* case itself notes that there may be some delay because claims, such as administrative claims, "may remain unallowed or objections to claims may be unresolved." *Jones,* 32 B.R. at 958 n. 13. As *Jones* concludes, "[i]t is difficult to combine these considerations into a rule more precise than that the effective date of the plan should be reasonably close to the date of the confirmation hearing." *Id.*

In theory, Debtors might delay proposing their plan or seeking confirmation until they have reduced Lehman's claim. For numerous reasons the court will not put TKGE's case "on hold" indefinitely, until Debtors' litigation with Lehman is concluded, probably in fora other than this court.

That course relies on too many contingencies. Debtors might not succeed in reducing Lehman's claim. Alternatively, the Polish subsidiaries from which all of Debtors' income derives might not do as well as Debtors expect. Alternatively, even if Debtors do reduce Lehman's original claim and can afford to pay the reduced amount, that reduction might be more than offset by ongoing interest, fees, costs, and charges to which Lehman may be entitled under 11 U.S.C. §§ 506(c) or 1129(a)(7). *See Jones*, 32 B.R. at 955 n. 6 (even if class is legally unimpaired, individual members of class who are factually

harmed may have standing to object to confirmation on best interests grounds).

The court is aware of Debtors' predictions that once TKGE's bankruptcy case is dismissed Lehman will feel free to exercise control over Debtors' equity interests, and will seek dismissal of the other bankruptcy cases, or other relief. Debtors have presented no reasons, however, why any of this makes TKGE's bankruptcy case itself something other than a two-party dispute, nor why it would affect any of the other factors recited above. Moreover, the court has already reminded the parties that even if Lehman controls the two other Debtors it might not be able to dismiss their cases, and if the cases were converted to chapter 7 (and not re-converted to chapter 11) then Lehman might face ongoing litigation with the chapter 7 trustee. *See* 11 U.S.C. § 1112.

The court agrees that the effective date should be "reasonably close" to the date of the confirmation hearing if the gap between those two events is likely to prejudice creditors or affect any relevant findings under 11 U.S.C. § 1129, both of which are true in this case. *Accord* Kenneth K. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 Am. Bankr.L.J. 551, 560–61 (1995) (effective date should bear reasonable relationship to confirmation hearing date).

Conversely, if (as is not the case here) there were no real danger of changed facts or prejudice then, as the same judge who decided *Jones* later stated, even a delay of "months or years" for an appeal "may be permissible." *In re Loveridge Machine & Tool Co., Inc.*, 36 B.R. 159, 166–67 (Bankr.D.Utah 1983). This does not ignore the concerns expressed in *Jones*: any unexpected developments after entry of a confirmation order could be the basis for a motion to reconsider.

The court believes that this approach reconciles the cases that, in various circumstances, either reject or accept some delay between the hearing on confirmation and the effective date. *See In re Wonder Corp. of America*, 70 B.R. 1018, 1020–21 (Bankr.D.Conn.1987) (effective date "cannot be indefinite or distant," but banks to be paid in full on effective date

were unimpaired, despite possible delays from appeals, where "it is apparent that any procedural delay will most likely be instituted by the Banks themselves" and banks did not request deposit of funds to be distributed); *Continental Securities Corp. v. Shenandoah Nursing Home P'ship*, 188 B.R. 205, 216–17 (W.D.Va.1995) (although court was "troubled" that creditor to be paid on effective date might not be paid for "several months" because of challenges to confirmation order, court was persuaded that delay was "not such an unreasonably long time as to conflict with the equitable balances set by Chapter 11") (quoting *Wonder Corp.*); *In re Inter Urban Broadcasting of Cincinnati, Inc.*, 1994 WL 646176, at n. 7 and accompanying text (E.D.La.1994) (confirming plan with effective date after FCC decision on assignment of licenses, where "no one suggests [the FCC's decision] will not be forthcoming"), *appeal dismissed*, 74 F.3d 1238 (5th Cir.1995) (table); *In re Rolling Green Country Club*, 26 B.R. 729, 730, 735 (Bankr.D.Minn.1982) (confirming creditor's plan that proposed distribution on effective date "defined to be such date as the proceeds of liquidation in the hands of the trustee become sufficient to effect the required payments"; holding that effective date must mean with a "reasonable" time).

For all of the above reasons, the court will adhere to its tentative decision to dismiss the TKGE bankruptcy case.

### C. *Motion For Stay*

■ The Motion For Stay is premised on the familiar notion that substantial harm will follow if TKGE is not allowed to remain in bankruptcy because of a parade of horribles that will follow if Lehman is permitted to proceed on its own. Nevertheless, the motion for stay fails to convince the court that there is a likelihood of prevailing on appeal, primarily because substantive consolidation is so subjective, analyzed on a case by case basis, and TKGE's two-party dispute is a classic example of a case that does not belong in bankruptcy.

Nothing presented either initially or on the two latest motions even remotely resembles the facts of, or the legal requirements for substantive consolidation as described in *Alexander v. Compton, supra.* Absent substantive consolidation, TKGE's bankruptcy case remains just a two-party dispute.

That being said, the court is mindful of the difficulty an aggrieved party has in convincing a judge who has ruled against it that that party might well be able to convince another judge or panel of judges to rule the other way. Given the importance of this issue to Debtors and the unlikelihood of prejudice to Lehman, the court will give TKGE ten days to seek a further stay pending appeal.[8] Since the order granting the Motion To Dismiss is being entered concurrently with this Memorandum Decision, the stay will be for ten days.

### III. *Disposition*

Concurrently with the issuance of this Memorandum Decision, the court is issuing orders which: (1) grant the Motion To Dismiss; (2) grant the Motion For Stay, but only as to the order dismissing TKGE's Chapter 11 case and not as to the Order Denying Consolidation; and (3) deny the Motion For Reconsideration.

---

8. By its disposition of the Motion For Stay in this Memorandum Decision and the accompanying orders, the court intends to have dealt initially with the issue of a stay pending appeal as contemplated by Fed. R. Bankr.P. 8005.